(April Term, 1933)

## STOCKWELL v. MORRIS et al.

(No. 1775; May 25, 1933; 22 Pac. (2nd) 189.)

2

For the plaintiff in error, the cause was submitted on the brief of *H. I. Bacheller, C. G. Cypreansen,* and *W. B. Holliday,* all of Casper, Wyoming.

The cause was submitted on behalf of the defendants in error, on the brief of *Durham & Bacheller* and *E. E. Murane,* of Casper, Wyoming.

4

BLUME, Justice.

In this case Morris, salesman for the Maytag Inter-mountain Company, was driving his automobile from Hudson to Lander and collided with the automobile of plaintiff. The latter sued the salesman, as well as his principal, for damages caused by the collision. The court directed a verdict for the company, and the sole question herein is—assuming the agent to have been negligent—as to whether or not the court's action was right. The testimony herein is uncontradicted.

Morris was a salesman for the company in selling washing machines, and had been working for it for some years. That was his only occupation. He received a commission on all sales made, and no further compensation. He made no collections, but occasionally seems to have delivered washing machines sold. He drove his own automobile in the performance of his work, and paid his own expenses. He appointed and discharged sub-salesmen under him, receiving a commission on their sales, and he took them out from time to time to show them how to sell washing machines. He was assigned the central portion of the state as his territory, which, perhaps, was somewhat changed from time to time. In any event, there is some correspondence in the record with the com-

pany's manager in Denver as to some change to be made therein. The company furnished him with no rules or regulations as to his work, except as to the terms of the contracts to be made for the sale of washing machines. The details of the work were left to him. Contracts for sales, blank forms for which were furnished by the company, were, by the subsalesmen, delivered in triplicate to a girl in charge of an office, which the company kept at Casper, but Morris apparently sent contracts made by him to the Company at Salt Lake. He seems not to have had anything to do with the office at Casper, though apparently he made that his headquarters. On May 27, 1930, the date of the collision above mentioned, Morris, in company with his wife, drove his automobile to Lander to see a Mr. Tyler, a salesman under him, to see if he could help him in his work. After reaching Lander, he, at the suggestion of Tyler, and in company with him, drove to Hudson, to see Mrs. Radovitch, who had a Matag washing machine which was out of repair, though repairs of machines were ordinarily made by a special representative of the company. Tyler discovered the trouble, fixed the machine, gratuitously, and he and Morris then drove back to Lander, and the collision occurred while doing so. Morris wrote the Maytag Company as to that fact.

Counsel for appellant argue that the Maytag Intermountain Company was the principal and Morris was its agent, and that the former is, accordingly, liable herein, and they say that the cases which hold contrary to their contention deal with the relationship of master and servant, and that such cases have no application here. But an attorney is an agent. If, then, in attempting to manage his client's case, he, without specific directions, travels in an automobile to see a man who, in his opinion, might become an

important witness in his case, is his client responsible? So we have "Ford agencies," "Buick agencies," and other similar "agencies," handling products of automobile manufacturers. While today the managers of these agencies, ordinarily, perhaps, buy such products, they might handle them tomorrow on commission. They are agents, in the broad sense of that term, but should the manufacturer be held responsible for all the torts that the former might commit in disposing of these products? The Curtis Publishing Company, located at Philadelphia, every week sends its Saturday Evening Posts throughout the country. If a boy in Cheyenne, while on the errand of soliciting subscriptions for the magazine, or delivering it, negligently runs into another with his bicycle, should the company be held responsible? The citation to these examples, which might be multiplied many times, shows that the solution of the problem before us is not as easy as counsel for appellant seem to think, and in view of the fact that the case before us is one of first impression here, we have deemed it expedient to give it more attention than counsel for appellant apparently have thought it necessary.

Prior to the latter part of the seventeenth century, a master was not responsible for the torts of his servants, unless committed by his express command or subsequent assent. But in the case of Jones v. Hart, 2 Salk. 441, 91 Eng. Repr. 382, decided in 1699, it was held that if a servant driving a cart negligently runs into another cart, the master is liable. And from about that time commenced to be developed the modern doctrine that a master is responsible for the torts of his servant committed within the scope of his employment. Prof. Wigmore in 7 Harvard L. R. 392-404. Voices against this doctrine were heard from time to time. As late as 1876 Lord Bramwell told a Parliamentary committee that he could not

"see why the law should be so—why a man should be liable for the negligence of his servant, there being no relation constituted between him and the party complaining." 26 Yale L. J. 11. But dissenting voices have been swept aside. Shaw, C. J., said in Farwell v. Railroad Corporation, 4 Metc. 49, 38 Am. Dec. 339, that the "rule is obviously founded on the great principle of social duty, that every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another." The doctrine was carried to its logical conclusion. Independent agents or contractors were treated the same as servants. It was not until the second quarter of the nineteenth century that it was doubted that the doctrine of respondeat superior should be applied in all cases in which one man was employed to perform an act for another. 65 L. R. A. 624-631; note, 14 R. C. L. 79. Two decisions rendered in 1840, namely, Milligan v. Wedge, 12 A. & E. 737, and Quarman v. Burnett, 6 M. & W. 497, took a definite departure from the then generally accepted rule, and by the middle of that century it came to be recognized that there are many cases in which a man should not be held responsible for the acts of a representative, if the latter is not under his immediate control, direction or supervision. Such representative has generally been called an independent contractor, a phrase that has acquired almost a technical meaning, originally, of course, applied to one who actually performed services under an independent contract. It is not altogether appropriate to apply the term in all cases, or in the case at bar, and various other terms have been sought to be substituted, such as entrepeneur or enterpriser.

Courts in cases of the character now before us have ordinarily ignored the difference between an agent and a servant, and have ordinarily merely at-

tempted to determine in a particular case whether the person through whose instrumentality a negligent act was committed was a servant or ordinary agent on the one hand, or an independent contractor, or independent agent, pursuing a separate occupation, on the other. The controlling or principal test is generally stated to be as to whether or not the employer, using that term in a broad sense, has the right to control the details of the work to be done by the servant or agent, or whether the latter represents the former only as to the results to be accomplished. 14 R. C. L. 67; 39 C. J. 1316, and the cases hereinafter cited. The rules governing principal and agent are a later development in our law than those governing master and servant, and have branched off from the latter. And it is insisted in the restatement of the law of agency by the American Law Institute that it is important that the distinction be observed. A servant is defined as a person employed to perform personal service for another in his affairs, and who, in respect to his physical movements in the performance of the service is subject to the other's control or right to control, while an agent is defined as a person who represents another in contractual negotiations or transactions akin thereto. The reason assigned for the importance of making the distinction is that an agent who is not at the same time acting as servant cannot ordinarily make his principal liable for incidental negligence in connection with the means incidentally employed to accomplish the work entrusted to his care. Draft 1, p. 8; draft 5, p. 30-31; pp. 99-100. See also 19 A. L. R. 253. We think that the distinction mentioned may be drawn with profit. The control, or right of control, over physical movements generally exists when a person performs personal service for another, unless he is an independent contractor. That is not true, or not nearly as true, in

the case of an agent. Moreover, actual control is ordinarily more immediate in the case of a servant than in the case of an agent. There can be no doubt that a salesman, such as Morris was, is an agent. 19 A. L. R. 260. Of course, an agent may, as to some work performed for his principal, be a servant. But no personal service, not even the delivery of washing machines, is involved in this case, unless the driving of the automobile may be called such. And the gist of the controversy herein is as to whether the principal is liable for its agent's negligence while engaged in a more or less necessary physical act which is incidental to the performance of his general duties, or, if we must use a special term, whether or not the agent, while engaged in that physical act, must be regarded in the nature of an independent contractor. The test which courts have generally adopted is that already heretofore stated. Numerous cases involving this, or a similar point, have been decided since 1840. Many of them involve a salesman or solicitor, and their number is sufficiently large so as to constitute a class by itself, and other cases need not be mentioned, unless incidentally. Notes on this class may be found in 17 A. L. R. 621; 29 A. L. R. 470; 54 A. L. R. 627. Notes, more or less valuable here, on the subject of independent contractors may also be found in 65 L. R. A. 620; 18 A. L. R. 801; 19 A. L. R. 226; 14 R. C. L. 66. We should naturally expect in the earlier cases on the subject in hand a tendency not to deviate too far from the doctrine applicable to the relation of master and servant.

The first case which we have found to be at all similar to that at bar, decided in the United States, is the case of Pickens and Plummer v. Diecker & Brother, 21 O. S. 212, 8 Am. Rep. 55, decided in 1871. In that case the employer of Wright, a traveling agent, was held liable for negligence of the agent in

letting a team of horses get out of control and causing damages to a third person. Wright was hired on an annual salary. His duties required him to stay in the employer's store, or to travel, soliciting orders for goods and making collections, as his employers might direct; when traveling, his expenses were allowed to him and paid by his employers. The team used at the time of the negligence in question was hired from a third person. The court, while recognizing the rule that an employer is not liable, if an agent is not under its immediate control, direction or supervision, held that such control existed, since the agent could not, consistently with his duty, have refused to obey the employer's direction, and that the contract of employment did not bind the employee to produce any given result. The second case, at all similar to the case at bar, decided in the United States, appears to be the case of Singer Manufacturing Company v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440, decided in 1889. In that case one Combett was engaged by the Singer Manufacturing Company to canvass for the sale of its machines. Corbett agreed to give his exclusive time and best energies to the business of the company, and to pay all expenses; the company furnished a wagon, Corbett a horse and harness, and as compensation Corbett received a commission on the sales made by him. By careless driving of the horses, another was injured. It was held that Corbett was a servant and that the company was liable, the court remarking that it might, if it had seen fit, have instructed Corbett what route to take or even at what speed to drive. This case was, under somewhat similar facts, followed in Williams v. National Cash Reg. Co., 157 Ky. 836, 164 S. W. 112, and Lewis v. National Cash Reg. Co., 84 N. J. L. 598, 87 A., 345, except that in

these cases the agent used his own automobile. In both cases, the agent was paid by commissions on sales. A like result was reached in Dillon v. Prudential Ins. Company, 75 Cal. App. 266, 242 Pac. 736, in which it appears that McDonald, the agent, drove his own automobile, was paid by salary and commission upon new business, but his hours of work were regulated; he was required to give his entire time to the work of the company, and his duties were prescribed in detail. He traveled about, however, as he pleased. A similar case is Brown v. Accident Comm., 174 Cal. 457, 163 Pac. 664, except that he merely received a commission, which was held to be immaterial. In the case of Dishman v. Whitney, 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460, it appears that the Grote-Rankin Company employed Whitney as a solicitor for the sale of furnaces; he was to devote his entire time to the business of the company. He drove his own automobile, with the knowledge of the company. He was allowed $40.00 for its upkeep, and drove it under a license of the company. He received as compensation $40.00 per week and 2 per cent commission on sales. The company was held liable for his negligence in driving his automobile, the court relying largely on Buckley v. Harkens, 114 Wash. 468, 195 Pac. 250, a similar case, in which, however, it does not definitely appear as to whether the employee was to devote his whole time to the business of the employer. The court frankly acknowledged that some of the decisions in other states, hereinafter mentioned, could not be reconciled with its holding. In the case of Auer v. Sinclair Refining Company, 103 N. J., Law 372, 137 A 555, 557, 54 A. L. R., 623, a similar result was reached. In that case one MacLachman was employed by the refining company "to devote his whole time and best endeavors to the sale of the company's products to factories in a specified

territory in New Jersey;" he was authorized to use his own automobile; the company paid him for the upkeep and running expenses of his car weekly; he received a salary, and "the company retained control and directed the work by daily telephonic or written communications with him from its New York office." See also the case of Burgess v. Garvin, 219 Mo. App. 162, 272 S. W. 108, where the evidence as to the time which the employee was to devote was extremely weak. All of the foregoing cases may be distinguished from the case at bar in that the agreement between the parties was, or it was inferred, that the employee should devote all of his time to the business of the employer. We need not decide as to whether that fact should be of controlling importance or not.

In Natchez Coco-Cola Bottling Co. v. Watson, 160 Miss. 173, 133 So. 677, the company engaged a truck driver to drive its truck over a designated route for the purpose of selling coco-cola along the route, being paid on a commission basis. The company was held liable for negligence of the driver. A similar case is Dunbaden v. Castles Ice Cream Company, 103 N. J. L. 427, 135 Atl. 886. These cases may be distinguished from the case at bar, whether logically or not we need not say, by the fact that the route to be driven was fixed and definite, showing, perhaps, more detailed control over the physical movements of the person employed. But see Leach v. Timber Co., 161 Wash. 426, 297 Pac. 203, 206.

There are, however, a number of cases which are hard to distinguish from the case at bar. Several of them were decided under the workman's compensation laws, and there is, perhaps, in such cases manifest a tendency toward a liberal construction in favor of a claimant under such laws. Marquez v. Le Blanc, (La. App.) 143 So. 108. And while it seems, at first

blush, that there should, perhaps, be no difference of construction in workmen's compensation cases and damage cases, as held by at least some of the authorities, those from Massachusetts, for instance, still the former involve a principle of public policy different from that involved in this case, namely, that each industry should bear its own burdens, and since it is not necessary to decide the point herein, we refrain from doing so. In Woodward-Wanger Co. v. Nelson, (Tex. Civ. App.) 11 S. W. (2d) 371, in which several other Texas cases are cited, it is said that a traveling salesman who uses his own automobile, works on commission, and whose movements, route and customers are matters of his concern, is not an independent contractor, but an agent or servant. Similar are McCarthy v. Dunlevy, Franklin Co. 277 Pa. 467, 121 A. 409, and Cardiota v. Piano Co. 87 Pa. Sup. Ct. 458, both workmen's compensation cases, it not appearing, however, in the first of these cases, who furnished the automobile. In Mitchem v. Pipe Co., 45 Ga. App. 809, 165 S. E. 889, the broad rule is laid down as follows:

"Where a person is employed to travel over a general territory designated by the employer, at a fixed salary per month, with traveling and hotel expenses paid by the employer, to solicit orders from prospective purchasers, selected and ascertained by him, for the sale of concrete pipe to be used in construction work, at prices and on terms fixed by the employer, and makes periodic reports to his employer of the business done, although he may select and furnish his own means of travel and select his own customers and is 'turned loose to get business' and 'get results,' and where it does not appear that the employer has relinquished his right to supervise and control the manner and method and means of its performance, the employee is not an independent contractor, but the relationship between the employer and the employee is that of master and servant."

See also New Amsterdam Casualty Co. v. Sumrell, 30 Ga. App. 682, 118 S. E. 786, a workman's compensation case; and Marchand v. Russell, 257 Mich. 96, 241 N. W. 209, a damage case.

Somewhat peculiar are the cases of Aisenberg v. Adams Company, 95 Conn. 419, 111 A. 591, a workman's compensation case, and Borah v. Motor Company, 215 Mo. App. 621, 257 S. W. 145, a damage case, because of the fact that in each of them the relation of master and servant was held to exist, mainly because the employer had the right to control the terms of the contract, rather than the manner or means of accomplishing the result. In each of them the person, held to be a servant or agent, disposed of his own time and traveled mainly in his own discretion, and the only distinguishing feature from the case at bar is the fact that in each of them the agent used the vehicle of his employer. See also Burgess v. Garvin, supra. In so far as these cases base the right of control on the fact that the employer had the right to direct the terms of the contract, they are opposed to the great weight of authority. If that test were correct, then there would be few, if any, cases involving negligence by a salesman, in which the doctrine of liability of the master for the negligence of a servant would not be applicable. These cases treat the physical movements of the person employed as but a minor part or incident in the performance of the employment, when, as a matter of fact, it is the major factor so far as an automobile accident is concerned. The making of a contract, effected by an agent, would seem to be but the *result* which is sought. It is exactly during the time that the so-called minor part is performed when an accident with an automobile is apt to occur. It will not likely take place while the salesman is talking to a customer, trying to effect, or effecting, a sale. If,

accordingly, the right of control is the test in connection with the question before us, and the courts apparently agree that it is, then, it would seem, it ought to be directed to that portion of the employment directly connected with the factor by reason of which liability is sought to be established. It would not do, we think, to pursue the shadow, leaving the substance out of consideration.

There are a number of cases, more and more increasing in recent years, in which this view is taken, and in which it is held, as we think correctly, that under circumstances similar to those appearing in the case at bar the principal is not liable. That is true in Barton v. Studebaker Corporation, 46 Cal. App. 707, 189 Pac. 1025, 1029; Dohner v. Grocery Co., 116 Kans. 237, 226 Pac. 767; McCraner v. Nunn, 129 Kans. 802, 284 Pac. 603; Ramp v. Osborne, 115 Or. 672, 239 Pac. 112; James v. Tobin-Sutton Co., 182 Wisc. 36, 195 N. W. 848; 29 A. L. R. 457; Badger Furniture Co. v. Ind. Comm., 200 Wis. 127, 227 N. W. 288; Aldrich v. Grocery Co., 206 Ala. 138, 89 So. 289, 17 A. L. R. 617; Howitt v. Hopkins, 219 App. Div. 653, 220 N. Y. S. 462; Marquez v. Le Blanc, (La. App.) 143 So. 108; McCarthy v. Souther, 83 N. H. 29, 137 Atl. 445, 450; Pyyny v. Biscuit Co., 253 Mass. 574, 149 N. E. 541, 542; Child's Case, 274, Mass. 97, 174 N. E. 211; Goldsmith v. Chesbrough, 138 Md. 1, 113 Atl. 285; Westcott v. Young, 275 Mass. 82, 175 N. E. 153; Nettleship v. Shipman, 161 Wash. 292, 296 Pac. 1056, the court holding that the rule of Dishman v. Whitney, supra, ought not to be extended. See also Khoury v. Illuminating Co., 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159, and General Exchange Ins. Corp. v. Findlay, 219 Ala. 193, 121 So. 710. In all of these cases the agent used his own automobile. In nearly all of them, the principal knew of that use, in many instances contributing all or part of the

expenses in using the automobile. In only two, the Oregon and Maryland cases, the court paid some attention to the fact that the employer did not know or did not direct the use of the automobile. In some of these cases only a commission was paid; in some of them a salary plus a commission. In Pyyny v. Biscuit Co., supra, the Biscuit Company was sought to be held liable for the negligence, in an automobile accident, of its salesman, who had no regular hours of work, except that he was to see his customers at some time during the day; his sole business was to sell biscuits for the company; he was paid a salary and commission and the expense of operating his car; he carried a sample case and advertisements of the company in the back of his car. The Massachusetts court said:

"On the above facts it is plain Bancroft was his own master in respect to the time he should devote to the business of the defendant, and to the place within certain designated territory where he should solicit sales. It is also plain that it was his duty and not that of the defendant to register the automobile and obtain a license to operate it. The defendant had no right on the reported facts to direct the manner in which Bancroft should control his car. It assumed no obligation to keep the car in repair other than is involved in its agreement to pay the expense of operating it, or, as the plaintiff puts it in his brief, to pay 'so much per mile for the number of miles that he (Bancroft) operated said car for them in connection with his employment.'"

In Barton v. Studebaker Corporation, supra, an automobile salesman injured another in an accident. He used the storehouse of the defendant corporation to show automobiles, but used his own car in finding prospective purchasers. The court in holding the defendant corporation not liable said among other things:

"The test of control in such cases means complete control, or the full and unqualified right to control and direct the details or the means by which the work is to be accomplished * * *. In this case, as the undisputed evidence shows, the defendant Owen was not subject to the authoritative control of the Corporation in respect of the details of his work or as to how it should be performed. This was entirely up to him. He could work when he pleased and seek out and select such persons as he pleased as purchasers of the automobiles of the Corporation. Indeed, he was so far from being subject to the control or direction of the Corporation as to the means or mode of and the time for doing his work that he was under no obligation to give any particular time or service to the Corporation. When he brought a 'prospect' to the corporation, he was acting for himself as well as for the corporation, and if such prospect was transformed into a purchaser, he received his stipulated share of the money for which the machine was sold and nothing if a sale was not effected."

In McCarthy v. Souther it is said that the decisive inquiry is as to whether or not the employer has any control over the management of the automobile of the salesman. One of the best statements which we have seen, particularly applicable in a case of the character now before us, is that of Prof. Seavy in Tentative Draft No. 5 of the Restatement of the Law of Agency, page 100, where it is said:

"A principal employing another to achieve a result but not controlling the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus the principal is not responsible for the negligent physical conduct of an attorney, a broker, a factor or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control

physical details as to the manner of performance, which is characteristic of the relation of master and servant, that the person in whose service the act is done, becomes subject to liability for the physical conduct of the actor."

In this view, then, that the right of control of the physical movements—the automobile—is the decisive inquiry, it becomes important what the record discloses in that regard. The evidence shows that the Maytag Company furnished Morris no rules or regulations to govern him in the performance of the work but that the means and manner thereof was left to him. That, perhaps, does not definitely show that the right of control was not in the company. The fact that the company did not exercise control does not show that it did not have the right of control, though it may be some evidence thereof. It has been held that in the absence of a stipulation the existence or non-existence of the right must be determined by reasonable inferences shown by the evidence. Press Pub. Co. v. Acc. Comm., 190 Cal. 114, 210 Pac. 820; May v. Farrell, 94 Cal. App. 703, 271 P. 789. Among the points frequently taken into consideration is the fact of the right of discharge. 14 R. C. L. 72. But we take it that that right exists in the vast majority of cases of the character under consideration. And it has been said that it is not, by the later cases, considered any decisive test. Leech v. Timber Company, supra. In the case just cited the court said that "there is no evidence showing nor evidence from which it may be reasonably inferred that appellant had any control or supervision of Jones in the operation of the car or the manner in which delivery of the tools was to be effected," and therefore held Jones to be an independent contractor. In General Exchange Ins. Co. v. Findley, 219 Ala. 193, 121 So. 710, the court seems to hold that unless an express reser-

vation of the right of control may be inferred from the evidence, none can be held to exist. And in Mc-Carthy v. Souther, supra, in which there was no evidence as to the right of control, the New Hampshire court holds that the mere fact that the service performed by a salesman is in the furtherance of the employer's business is not enough, and that when no right of control may be implied from the situation, and none has been expressly reserved, the mere fact that the relationship is of agency or service is not enough to subject the employer to liability. The court further said:

"Souther owned the car and was entitled to its exclusive possession. So far as appears, his contract of employment gave his employer no right of direction for any use of the car by others, and he was to maintain and run it as his personal affair. The allowance made for expenses implied no right and no liability on the employer's part in respect to its maintenance and operation. No authority for the employer to direct Souther how to run the car is to be inferred from the relations between them, and the employer had no more charge or control over Souther's means and manner of transportation than if the travel had been by train. While the employer might assign the routes and times for Souther's trips with the car, it might not direct how the trips should be made, or how the car should be managed. The employer, having no right, if present, to direct Souther in the way he ran and used the car, is not liable for the way it was run and used. How the car was run was its affair only in the sense of its interest in the results obtained from proper operation, and that interest was no evidence of a right to run it, or to say in what way it should be run as to the details of operation."

In the case at bar there was no express reservation of control, and none can be implied. In fact it would seem that in view of the fact that actual control of an

automobile driven hundreds of miles away from the place of the employer can at best be theoretical only, even though actual control has been reserved, the right of such control should, in a case of this character, be able to be implied only from reasonably clear evidence showing it.

We think, accordingly, that the employer in this case ought not to be held liable. Whether we should hold the same in a case similar to the instant one, but where the agent uses the automobile of his principal, in accordance with what seems to be the rule recognized in Premier Motor Company v. Tilford, 61 Ind. App. 164, 111 N. E. 645, we need not say. Some criticism has been leveled at courts for their disagreement on this subject and for not finding a more decisive and clear-cut test. But it must be remembered that the rule that a master is liable for the negligence of his servant committed in the course of his employment—which is at the basis of the cases holding the employer in cases of this character liable—is founded not upon a rule of logic, but upon a rule of public policy, and hence the digression, not constituting an abrogation of the rule, must necessarily also involve the question as to how far public policy requires the digression to be made, and it is not to be wondered at that one court answers the question one way, another another way. It is suggested in 28 Mich. L. R. 378 that the "independent calling" test is easier of application. We are not certain of that, unless we limit independent callings to those definitely known as such in the past. But why should we? If a factor is an independent agent, for whose negligence in his physical movements his principal is not liable, why should liability lie in a case like that at bar? The difference between a factor and a man traveling to sell washing machines, or an insurance agent soliciting insurance, is not vital. The latter's

calling may, in this age of commercial activity, well be considered as independent as that of a factor.

Every rule should, of course, have a reason. Why should we depart from the ordinary rule applicable in the case of master and servant? Is that departure, in the case at bar, based on reason? We think it is. We have, it may be noted, laid some emphasis on the fact of the ownership of the automobile in question. It has been said that when a plaintiff has suffered injury from the negligent management of a vehicle, it is sufficient prima facie evidence that the negligence was imputable to the owner thereof, though driven by another. 1 Shearman & Redfield, on Negligence (6th Ed.), par. 158;; Houston v. Keats, 85 Or. 125, 166 Pac. 531. The converse of that proposition should, of course, be true. Nay more, it has often been said that ordinarily a person who is not the owner and is not in control of certain property is not liable for negligence in respect to such property. 45 C. J. 882. And surely, that is in accordance with the plain dictates of justice, unless a counter-vailing reason appears in a particular case. A number of cases are found in notes to 57 A. L. R. 739 and 60 A. L. R. 1163, in which it was held that the fact that an employee drove his own car or other vehicle did not relieve the employer from liability for the negligence of the employee in driving such car. But generally speaking that ought to be limited, we think, to those cases in which the driver is a servant, as distinguished from an agent, or in which it clearly appears that the right of control is reserved to the principal, and it has, we think, been generally so limited except in the class of cases already heretofore mentioned. And if a departure from the doctrine of respondeat superior is at all justifiable in any case, as we think it is, and we resort to a consideration of broad public policy, reasons for the limi-

tation mentioned are not altogether absent. Practically, in a case of the character before us, the agent has the sole power of control of his automobile. He, as owner, can distribute the risk of driving it by taking out insurance better than, or at least as well as, his principal. If he alone is held responsible for his negligence, that has a tendency to cause him to exercise care to prevent accidents. To put a man upon his own responsibility generally has that effect. And that prevention of automobile accidents is a matter of considerable, nay vital, importance today is, of course, attested by daily experience. And while this reason cannot be held to be controlling, or perhaps should not be even considered in some cases, it furnishes at least some basis in the application of public policy.

The judgment of the trial court is, accordingly, affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.