Matthias, J.
 

 The reversal of the judgment rendered for the defendant upon the general verdict in its favor was based upon error found in the giving of the requested instruction set out in the foregoing statement, and upon the refusal of the trial court to apply the principle of the case of
 
 Ziehm
 
 v.
 
 Vale,
 
 98 Ohio St., 306, 120 N. E., 702, 1 A. L. R., 1381. The first question presented, therefore, is whether such instruction was erroneous. The requested charge was upon the issue made by the pleadings, the plaintiff having averred in substance that by reason of the emergency which arose in the conduct of defendant’s business from the fact that a large number of milk bottles had fallen and broken, immediate action was required so that the defendant’s loading device could continue in operation and its business proceed in its usual routine; that defendant’s employee in charge of its work invited the plaintiff to come on the premises and into the vicinity of such loading device to assist in gathering up the fragments of broken bottles,
 
 *637
 
 which assistance plaintiff rendered, and then alleges that without warning of the dangers thereof, plaintiff was permitted to remain and play on or around such loading device.
 

 The claimed vice of such requested charge consists particularly in the instruction that the verdict of the jury should be for the defendant unless the jury found not only that plaintiff was upon the premises upon the request and invitation of defendant’s employee, to render assistance in the emergency existing, but that such assistance was really needed, and that if the jury found that such necessity did not exist and the employee could have himself done the work, the invitation was ineffective to bind the company and give the plaintiff standing, and ineffective to confer the rights of an employee. This contention presents the question of the nature and extent of the implied authority of an employee to call for assistance in the performance of his duties, thus placing the person so called under the same measure of protection as any other employee in the service. The rule applicable is stated in 18 Ruling Case Law, 580, Section 85, as follows:
 

 “If an unforeseen contingency or emergency arises, rendering it necessary in the employer’s interest that his employee have temporary assistance, the law implies authority to procure such necessary help; and a substitute or assistant procured under these circumstances is entitled to the same measure of protection as any other employee in the service. It is the emergency that gives rise to the implied authority, and if it does not in fact exist then neither does the implication of authority arise.”
 

 It is to be observed that under this rule the protection and relationship of employee does not arise merely by reason of the request of an employee for the assistance of another. An employee must either have express authority to engage such assistance or have done so under implied authority because of an unforeseen
 
 *638
 
 contingency or emergency giving rise to necessity in the employer’s interest. Here the evidence discloses that the tipping of cases upon the conveyor and the consequent breaking of bottles was not an unusual occurrence but happened occasionally, and when it did, defendant’s employee, Brewer, stopped the conveyor and picked up the bottles. In our opinion, applying the rule above stated, it must be concluded that although the emergency requirement may have been overstated by the trial court, the proven facts still fail to show conditions giving rise to the necessity for such emergency assistance.
 

 It is essential to here state some of the additional facts testified bearing upon this question and for the purpose of considering the further question presented. During the operation of the conveyor at the time in question it was under the control and supervision of defendant’s employee Brewer. It was located on defendant’s premises about 12 or 15 feet from the sidewalk. There is evidence that during this operation one of the cases tipped, causing bottles to fall outside and break; that at that time plaintiff and four other small boys were outside the fence on the sidewalk; that Brewer called the boys and directed them to pick up the broken glass; that for 15 or 20 minutes thereafter the boys stood around and watched Brewer loading the boxes on the truck while the conveyor continued to operate; that when cases ceased coming onto the conveyor from the cooler, Brewer went in to ascertain the cause, and that immediately upon Brewer entering the cooler the plaintiff and one of his companions “stumped” — that is, dared — each other to get on the conveyor. Something was said with reference to some pieces of glass on the conveyor, and that plaintiff sought to get them, but testimony of the boys clearly discloses that plaintiff’s attempted ride on the conveyor was the result of, as he called it, “stumping” his companion to do it. The latter went up first, and
 
 *639
 
 when he was at the top, plaintiff got on and called to another companion, “Look! I am taking a ride”, and immediately thereafter his foot was caught in a roller and injured.
 

 Brewer’s testimony is that he not only did not ask the hoys to come in hut, on the contrary, directed them to stay out, and chased them out; that about 15 minutes before the accident happened some bottles had fallen out of the case; that he turned the switch, stopping the conveyor, picked up the broken glass, and then again started the conveyor; that thereafter when he went into the cooler to ascertain why cases were not continuing to come out and found that it was because the filling operations inside had ceased; and that the boys were then standing on the sidewalk outside the fence. The boys do not state just where they were, but state that they were then “standing around” watching Brewer loading the truck. There is no evidence that when Brewer went into the building the boys were in the immediate vicinity of the conveyor. Upon Brewer’s return the plaintiff was upon the conveyor and Brewer immediately turned the switch, stopping its operation. It is disclosed by the evidence that the supervision of the conveyor and the loading of the cases therefrom was then and theretofore done by the employee, Brewer, without any assistance, and that he had performed that work about four months, and that there was nothing unusual about the operation of the conveyor or the loading process at the time in question.
 

 Ordinarily, whether the circumstances of any particular ease constitute what may be deemed an emergency, such as to authorize a temporary engagement of assistance by an employee in charge of the work, is a question of fact for the determination of the jury under proper instruction. But certainly reasonable minds could arrive at but one conclusion with reference to such emergency from the facts presented by
 
 *640
 
 the record in this case. Assuming the existence of the facts disclosed by the record in their aspect most favorable to the plaintiff, it is difficult to see how the principle of temporary emergency employment could be here applied; for these facts disclose no situation that could by anyone be deemed an emergency from which the implication of authority to procure assistance would arise.
 

 It is contended, however, that there was error prejudicial to the plaintiff in the instruction that unless the jury found such emergency situation was presented as to justify defendant’s employee calling in the plaintiff to assist him, and that pursuant thereto plaintiff was invited upon the premises, their verdict must be for the defendant.
 

 The facts above stated show the inapplicability of the
 
 Ziehm
 
 v.
 
 Vale case.
 
 It should be here observed that there is no evidence in the record of any habit or custom of children playing on or about this conveyor, nor is there any evidence that the plaintiff and his companions were ever at any previous time on or about the conveyor. Reliance is placed upon the claim that there was an invitation extended and direction given plaintiff by reason of the claimed emergency, and that it was pursuant thereto that plaintiff was on the premises of defendant. The charge of negligence in this particular is that the defendant should have foreseen the normal, childish desire to take a ride which actuated the plaintiff and his companion, who thereafter got upon the conveyor for the purpose stated. Assuming that Brewer, the employee, permitted plaintiff to enter said premises and that in doing so he was acting within the scope of his authority instead of contrary thereto, as the evidence indicates, what was the negligence which caused the injury? What duty was exacted of the defendant? Negligence is a failure to comply with a legal duty and, to be a predicate of an action, such duty must be one imposed
 
 *641
 
 for the benefit of the person injured and the failure to comply therewith must be the proximate cause of the injury. There is no evidence that the plaintiff or his companions had previously been upon the conveyor or had indicated a purpose to get upon it prior to the incident in question. If the plaintiff had previously indicated a purpose to get upon the conveyor and with knowledge of that fact defendant had started the conveyor without ascertaining that the plaintiff was not upon it, we then would have a situation more nearly like that presented in the
 
 Ziehm
 
 v.
 
 Vale case.
 
 The decision in that case was based upon the fact that the defendant’s automobile was standing on a public street, where unquestionably the boy had a right to be, and that defendant knew that a boy four years of age had been playing on the running board, and that shortly thereafter, when about to start the engine and move his automobile, he took no precaution to ascertain whether the child was on or near the automobile when he started. Here the evidence shows that this conveyor had been in continuous operation. There was no change from a statical, or passive, to an active, or moving, condition; nor does it appear that there was knowledge, actual or constructive, that the plaintiff was in a place of danger. If the doctrine of the
 
 Ziehm case
 
 be extended to cover such a situation, then in every instance the driver of an automobile passing an active boy on the street, in order to protect himself from a charge of negligence, must stop his automobile. The record here discloses that this injury resulted not from any defective condition or sudden starting of the conveyor, but from the pursuit of the plaintiff’s boyish purpose to take a ride, and that there was no legal duty of the defendant, the violation of which resulted in the injury complained of. The situation here is quite similar to that presented in the case of
 
 Holbrook
 
 v.
 
 Aldrich,
 
 168 Mass., 15, 46 N. E., 115, 60 Am. St. Rep., 364, 36 L. R. A., 493, where a directed verdict
 
 *642
 
 was sustained in an opinion written by the late Mr. Justice Holmes, then a member of that court. A child rightfully in a grocery store was injured when she put her hand in the spout of a coffee grinder in operation to procure some grains of coffee. After stating that the defendants’ invitation bound them to due care for the safety of those walking in the neighborhood while simply moving about, the court held they were not bound “to look out for or to prevent wrongful acts, on the ground that the acts if done might hurt the actor. Temptation is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it.”
 

 Our conclusion is that upon the record before us the judgment of the Court of Appeals must be reversed and the judgment of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Jones and Zimmerman, JJ., concur.