Blanche COOKE and Arthur J. Cooke, Plaintiffs-Appellants,

v.

E. F. DREW & CO., Inc., Defendant-Appellee.

No. 353, Docket 28000.

United States Court of Appeals Second Circuit.

Argued May 7, 1963.

Decided June 25, 1963.

Edwin F. Woodle, Cleveland, Ohio, Stanley M. Estrow, New York City, on the brief), for plaintiffs-appellants.

George J. Conway, New York City, for defendant-appellee.

Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge.

Appellants, husband and wife and residents of Ohio, brought an action for injuries suffered in an automobile accident there, against E. F. Drew & Co., a New York corporation maintaining its principal place of business in New York. The appellants take this appeal from a judgment entered upon a jury verdict for the defendant. They assert that the jury was improperly instructed by Judge Bonsal in several respects with regard to the appellee's responsibility for the allegedly authorized acts of one Hinchcliffe, an employee, and the negligence of his friend, one O'Malley.

The essential facts of the case do not appear to be in dispute. Drew, a manufacturer of detergents and dishwashing equipment, employed Hinchcliffe as a salesman and serviceman. He was to service a large territory in Ohio, compensation for which was to be solely in the form of commissions on products sold. While on his rounds, Hinchcliffe was expected to bear all expenses, and in fact he used his own car in calling on customers. Although he was required to furnish daily and "other routine" reports on his activities to the appellee, the selection of customers and the times at which they were to be visited were left completely to his discretion.

■ On August 30, 1954, Hinchcliffe called on several customers. Emerging from one such visit, he met his friend O'Malley, and together they sought relief from the warm Ohio summer at the nearby Merry Widow Bar. Ample refreshments spurred Hinchcliffe's will to serve but at the same time wearied him; he decided to visit another customer, but was "tired" and accordingly requested O'Malley to drive. The two set out in Hinchcliffe's car, Hinchcliffe giving precise directions as to the route to be followed to O'Malley, who was at the wheel. En route, the car collided with that occupied by the appellants, causing serious injury to appellant Blanche Cooke. Appellants now seek to hold Drew liable on principles of *respondeat superior*.[1]

■ In submitting the case to the jury, the District Judge permitted them to determine, in arriving at their general verdict, whether Hinchcliffe was an "employee" of Drew at the time of the accident. Appellants now assert that this constituted reversible error, and that Hinchcliffe was an "employee" as a matter of law. A request for such an instruction was, in effect (construing such request quite liberally), made by them in the trial court. But in order that liability be fastened upon Drew, Hinchcliffe must be found to be an "employee" in the special sense of a "servant" for whose acts a master is responsible at common law. The Restatement of Agency (Second) § 220(1) emphasizes that the master-servant relationship turns fundamentally upon the master's right to control the actions of his subordinate. A particularly apt illustration posits a commission salesman, devoting full time to the sale of his employer's products, but driving his own car and free to select his own customers. Such an individual is not deemed a servant. Restatement of Agency (Second) § 220, Illus. 7.

This "control" test has been applied in a similar manner in several Ohio cases.

1. In determining the applicable law, the District Court would, of course, look to the conflicts law of the state in which it sits, here New York. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There seems no question but that, in this case, the New York courts would look to Ohio substantive law. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279.

In Pickens & Plummer v. Diecker & Bro., 21 Ohio St. 212, 8 Am.Rep. 55 (1871), still the most authoritative Ohio decision, the state Supreme Court found that a salesman, whose contract called for a fixed salary and whose traveling expenses were paid by the defendant company, was a servant. The court appeared to emphasize that the salesman's "time belonged to his employers and he was entitled to be paid irrespective of results." 21 Ohio St. at 215. Drew, on the other hand, apparently imposed virtually no restrictions upon Hinchcliffe's manner of operation and seemed far more concerned with the results achieved than with Hinchcliffe's means of attaining them. More recently, in Plost v. Avondale Motor Car Co., 55 Ohio App. 22, 8 N.E.2d 441 (1935), an Ohio intermediate appellate court dealt with the problem of derivative liability arising from an accident caused by the negligence of an automobile salesman. The salesman was obligated to devote all his time to the sale of defendant's automobiles; he was under the direct control and supervision of defendant's sales manager, and carried defendant's sales book, order blanks, and calling cards. As in the instant case, he was paid on a commission basis, was required to make daily reports upon his activities, and used his own car in his work. On this record, the court found, as a matter of law, that no master-servant relationship existed. Citing the original Restatement of Agency, and the section discussed above, the Ohio court insisted that a contractual right to control the actions of the employee was a necessary precondition to the invocation of *respondeat superior* liability, and that proof of this precondition was absent. See also Stockwell v. Morris, 46 Wyo. 1, 22 P.2d 189 (1933).

▮ Even in the light of these cases, this court might well refuse to upset a

jury finding that Hinchcliffe was, as a *matter of fact*, a servant—if the question was properly submitted. See Amstutz v. Prudential Ins. Co. of America, 136 Ohio St. 404, 26 N.E.2d 454 (1940). But it is quite another thing—and something which we are not now prepared to do— to say that the question is so free from doubt as to warrant a directed verdict to that effect in light of the varying circumstances which are relevant to the traditional test of "control", see Restatement of Agency (Second) § 220.[2] If anything, we find that the charge, by merely requiring that the jury find as one of the conditions to Drew's liability that Hinchcliffe be an "employee"— something it could hardly fail to do— was unduly favorable to the appellants.

Appellants also contend that the District Court erred in failing to instruct the jury that Hinchcliffe was authorized as a matter of law to employ an automobile in his work. It should be noted that the court's charge, calling particular attention to the wide territory to be covered, the heavy equipment which Hinchcliffe was to carry, and the instructions forwarded by the appellee concerning the use of an automobile, seems in substance identical to that requested. In any event, while we agree with appellants that Hinchcliffe's use of an automobile must have been contemplated by Drew, we find it impossible to believe that the jury might have found otherwise. In this regard, the trial judge's explicit reference to the circumstances which made the use of a car inevitable might be viewed as, in essence, an instruction that such a use was implicitly authorized.

▮ The major contention raised on appeal relates to the circumstances under which Drew might be bound by the negligence of O'Malley, Hinchcliffe's obliging associate. The District Judge

2. In view of the manner in which the Ohio courts have applied the various criteria which are elements of the "control" test, it was certainly not error for the District Court to refuse to charge that Hinchcliffe was a servant as a matter of

law merely because he "devoted his full time to the business" of Drew or because there was a written contract of employment with Drew and the company deducted social security and withholding taxes.

charged that the defendant could be held liable only if Hinchcliffe had been expressly or impliedly authorized to permit another to drive his car; in the absence of any such authority or actual negligence on the part of Hinchcliffe, Drew was not to be held responsible, regardless of whether Hinchcliffe and O'Malley were pursuing the defendant's business at the time the accident occurred. We are not convinced that it was error so to charge.

The requirement that a servant possess actual authority—express or implied—to employ an assistant before that assistant's torts may be imputed to the master is supported in this country by the overwhelming weight of authority. See Restatement of Agency (Second) § 241, and Reporter's Notes thereon; ibid. §§ 77–81; Mechem, Outlines of the Law of Agency § 378 (4th ed. 1952); Mechem, "The Liability of a Master to Third Persons for the Negligence of a Stranger Assisting His Servant," 3 Mich.L.Rev. 198 (1905). The position espoused by the appellants, and embodied by them in the requested instructions denied by Judge Bonsal, would require that Drew be held liable if Hinchcliffe was present at the time of the alleged negligence or if Drew's business was being pursued. Such a contention was expressly rejected, as a matter of New York common law, by Judge Cardozo speaking for the Court of Appeals in Grant v. Knepper, 245 N.Y. 158, 162, 156 N.E. 650, 54 A.L.R. 845 (1927).

Ohio law on the matter is admittedly not so clear. In Malloy v. Svoboda, 29 Ohio App. 331, 163 N.E. 579 (1928), an intermediate appellate court refused to find that the absence of actual authority precluded the imposition of derivative liability. There, a newspaper company was held responsible for the negligence of a boy enlisted by a company truckdriver to aid in the distribution of papers; the boy, who was to toss the papers from the truck, was found a "mere extension" of defendant's employee. But Malloy, although helpful to the appellants, does not seem representative of the attitude of Ohio courts. Thus, more recently, in Sandlin v. Hamilton Auto Sales Co., 49 Ohio App. 313, 197 N.E. 238 (1934), another intermediate appellate court took a far more restrictive view of the principles of *respondeat superior*. Finding that an automobile salesman was not negligent in permitting his wife, concededly an excellent driver, to demonstrate one of defendant's cars to a prospective customer, the court held that this unauthorized delegation of the salesman's duties absolved the defendant company of any liability for injuries to the customer, even though they were apparently caused by structural defects in the car itself. And in Schreiber v. Universal Car Co., 60 Ohio App. 263, 20 N.E.2d 544 (1939), still another Ohio appellate court refused to find the defendant liable for injuries caused to a third person when the enlistment of a substitute driver could not reasonably have been anticipated in the ordinary course of events.

Further support for the position adopted by Judge Bonsal in formulating his instructions in the court below may be found in the Ohio Supreme Court's treatment of a related question—the scope of a master's liability for injuries received by the individual who is retained by a servant without the master's knowledge in order to assist in the conduct of the master's business. Thus, in Cloverdale Dairy Co. v. Briggs, 131 Ohio St. 261, 2 N.E.2d 592 (1936), the court insisted that "[a] servant has no authority to employ assistants for the performance of his duties to his master, unless he is either expressly or impliedly authorized to do so, or in cases of sudden emergency rendering temporary assistance necessary, or where the nature of the work is such as to require help." And in Meyer Dairy Prods. Co. v. Gill, 129 Ohio St. 633, 196 N.E. 428 (1935), the court upheld the position of a trial judge who had instructed the jury that an unauthorized assistant might recover only if his aid was necessary, and not merely convenient to the servant's performance of his assigned duties.

Were we an Ohio court and facing this question as an original matter, we might well distinguish between situations in which the servant delegates the precise duties for which he was employed—as when a truckdriver engages another to drive—and those in which merely incidental functions are assigned—as when a salesman such as Hinchcliffe is driven on his rounds by another. The customary justification for insisting that an employee be actually authorized to delegate his duties—the seeming unfairness in holding an employer for acts performed by one who is a stranger to him—seems far less persuasive when the acts in question are not those for which the employer has directly bargained. In such situations, the identity of the actor is apt to be a matter of relative indifference to the employer. Yet so far as we have been able to discover, the cases have never expressly drawn such a distinction for purposes of *respondeat superior*. And, as a federal court far removed from the state of the accident, we should be hesitant to implant such a theory in Ohio law. Since the requirement of implied or express authority does appear to conform to our reading of the Ohio cases, we find no error in the instructions of the trial court.

It should be noted that both the Restatement of Agency and the Ohio cases find implicit authority to delegate duties in the event of an "emergency", when necessary to protect the interests of the employer. In the Meyer Dairy case, supra, the breakdown of a machine spewing milk bottles in all directions, was held not such an emergency; the example of an "emergency" given by the Restatement (Second) § 79, Illus. 5,[3] depicts an incapacitated driver unable to communicate with his principal with regard to a truckload of perishable goods. Appellants sought no instruction regarding the possibility of there existing an "emergency" serious enough to warrant O'Malley's coming to the assistance of Hinchcliffe in his time of need. In any event, Hinchcliffe's "fatigue" in the present case would hardly seem to constitute such an emergency. Even he did not think it vital that he see his next customer—for immediately after the accident, he wasted little time in returning to the Merry Widow Bar, no doubt this time truly to drown his sorrows.

Judgment affirmed.

FRIENDLY, Circuit Judge (dissenting).

The trial judge declined to give charges, requested by the plaintiffs, to the effect that Hinchcliffe's use of a substitute driver in traveling from one customer to another imposed liability on Drew, and that if the jury found that Hinchcliffe was present at the time of the collision, it *might* also find that Hinchcliffe was in supervision and control of the vehicle and any injuries caused were acts of his for which Drew would be responsible. Although neither of these requests was letter-perfect, they seem to me to have been closer to being right than the instructions that were given.

The judge began this portion of his charge by saying that the jury must determine whether "there was any authority—again express or implied—from the defendant Drew authorizing Hinchcliffe to permit O'Malley to drive his car on Drew's business." Since he had previously defined "the implied authority of an employee" to mean "actual authority *evidenced by the conduct of the employer*", a negative answer to this question was almost inevitable. The judge then moved onto solid ground by telling the jury "You may consider here whether it appears under all the circumstances that the defendant Drew knew or should have known that Hinchcliffe might call on others to drive his car"—an advance which, however, was lost when he returned to his "express or implied" language, saying:

"Now if you find such authority, express or implied, from the defendant Drew to Hinchcliffe, and if you

---

**3.** Compare Restatement of Agency (Second) § 81, Illus. 2.

find that O'Malley was negligent in his operation of the car, then the defendant Drew is responsible. But if you find that there was no authority, either express or implied from the defendant to Hinchcliffe to use someone else to drive his car while on Drew's business, then the defendant Drew is not responsible for O'Malley's negligence."

In the latter event the jury was instructed to find for the defendant unless it determined that Hinchcliffe himself "was negligent either in allowing O'Malley to drive, or that he was in a position to supervise O'Malley and that he was negligent in failing to do so, and that this negligence of Hinchcliffe's was the proximate cause of the accident."

If Hinchcliffe had elected to drive while drunk and the jury found he was conducting Drew's business at the time, it is plain that the plaintiffs could recover against Drew for his negligence. It is likewise not disputed—indeed, the judge so charged—that if Hinchcliffe, while in pursuit of Drew's affairs, allowed O'Malley to drive, although he knew or should have known that O'Malley was not in condition to do this competently, Drew would be liable for any injury resulting from O'Malley's negligence. It would seem curious that if the servant follows a more prudent and thus more foreseeable course of conduct by getting a competent driver to drive, the master should escape liability for the acts of the substitute unless the master's own conduct can be proved to have evidenced assent to the servant's action, as would rarely be possible where the "master" is a corporation remote from the area of a "servant's" activities.

Of course, the question is not what we think but what we think the New York Court of Appeals would think the Supreme Court of Ohio would think.[1] See Nolan v. Transocean Air Lines, 276 F.2d 280 (2 Cir. 1960), rev'd and remanded, for further consideration of California law, 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed. 2d 591, adhered to, 290 F.2d 904, cert. denied, 368 U.S. 901, 82 S.Ct. 177, 7 L.Ed. 2d 96 (1961). New York would find no controlling decision by the Supreme Court of Ohio and conflicting ones by intermediate courts of appeals. Malloy v. Svoboda, 29 Ohio App. 331, 163 N.E. 579 (1928), is helpful to appellants in decision, and even more so in a dictum in which the court subscribed to the holding in City of Indianapolis v. Lee, 76 Ind.App. 506, 132 N.E. 605 (1921), that when a driver gives the wheel to a friend, the employer is liable. Opposed to this are the decisions of two other Ohio courts of appeals in the Sandlin and Schreiber cases, accurately stated by my brother Kaufman, although the Sandlin decision is quite incomprehensible since the driving by the wife rather than the salesman seems not to have been a cause of the accident. Abundant experience within the federal system, of which United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), is a recent example, should be enough to teach us that the highest court does not always follow a majority of the courts of appeals, and although Sandlin and Schreiber are somewhat later than Malloy, none of the three cases is of recent vintage. Decisions of the Ohio Supreme Court, such as Cloverdale Dairy and Meyer Dairy, on the issue whether the servant can impose obligations on the master toward a person whom the servant has procured to do the master's work, are not helpful in determining the scope of the master's tort liability to third persons. Furthermore,

1. I cannot accept appellants' argument that in the absence of controlling decisions by the Supreme Court of Ohio, the New York Court of Appeals would be bound to follow a decision of the particular Ohio Court of Appeals having jurisdiction where the accident occurred. A decision of an intermediate appellate court is only "a datum for ascertaining state law * * *." West v. American Telephone and Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)—not "law" itself. For this purpose a decision by the intermediate appellate Court having jurisdiction over the place of the accident stands no higher than that of a sister court.

they may be distinguishable on the basis that here the jury could find that O'Malley's driving was indeed "necessary," within the language of the Ohio Supreme Court, in view of Hinchcliffe's decision to call on another customer and his inability to drive himself.

With the Ohio authorities in this indeterminate state, I suspect the New York Court of Appeals would think the Supreme Court of Ohio would think what it would think. But that also is not altogether clear. Its early decision in Althorf v. Wolfe, 22 N.Y. 355, sounds in favor of the master's liability. The last word from the Court of Appeals appears to be Judge Cardozo's opinion in Grant v. Knepper, 245 N.Y. 158, 156 N.E. 650, 54 A.L.R. 845 (1927). The holding there was that the plaintiff should prevail under the rule of the common law because the defendant's driver could be found to have been negligent in allowing the incompetent substitute to drive or in failing to supervise him, and also under the New York statute as to the responsibility of owners of motor vehicles. It is true that Judge Cardozo was "not prepared to go so far" as to hold that the mere presence of the servant would make the master responsible for the negligent act of the substitute, and that a dictum indicates he would have ruled in favor of the master "if a competent substitute had been inattentive or remiss at a time when intervention by the servant would have been of no avail." But all this is readily explicable on the ground, indicated by my brother Kaufman, that there the servant was a truck-driver selected for his special skill in that occupation, or on what to me is the even more satisfying basis that Judge Cardozo was writing in a case where there was no reason whatever for the servant to have made the substitution and thus for the master to have foreseen it; he explicitly excluded "situations of emergency or danger." Moreover, the age of the gasoline engine had not fully arrived in 1927; we do not now regard driving a car, as Judge Cardozo may well have regarded driving a truck, as something to be done only by skilled initiates. The lack of later New York Court of Appeals cases dealing with common law liability of the master for a substitute of the servant, and the general paucity of case authority on the subject are doubtless due to the development of statutes imposing liability on a car owner for the negligence of anyone using a vehicle with express or implied consent, a criterion which Judge Cardozo found met even on the facts in Grant v. Knepper. This legislative development is one to which courts ought not to be blind.

It is hard to believe that Drew would have cared an iota whether Hinchcliffe himself drove his car on his rounds or had it driven by his wife if she was a good driver, unless, which does not appear, this would have voided Drew's insurance coverage or increased its premiums. Even more clearly Drew would have preferred to have some other driver at the wheel on the night of August 30, 1954, when Hinchcliffe was experiencing the symptoms he had done so much to earn. The master is liable in tort for acts of a substitute chosen by the servant in the course of the latter's employment _either_ where the use of a substitute was actually authorized _or_ where this was a risk fairly incidental to the enterprise. See 2 Harper & James, The Law of Torts (1956), 1378–81 and authorities cited. The basis for this piece of elementary good sense was stated long ago by Lord Brougham: "I am liable for what is done for me and under my orders by the man I employ * * * and the reason that I am liable is this, that by employing him I set the whole thing in motion; and what he does, being done for my benefit and under my direction, I am responsible for the consequences of doing it." Duncan v. Findlater, 6 C. & F. 894, 910, 7 Eng.Rep. 934, 940 (1839). Surely the jury here could have found it a foreseeable risk that salesmen who drive cars will occasionally become ill or even get slightly drunk and will then ask someone else to drive for them, even though the master might have preferred that the servant do nothing until

full sobriety had been achieved and would have so informed the servant if the latter had communicated with him—in this case, quite unrealistically, by long distance telephone. I can see no reason why the master, who would be liable if the salesman acted imprudently or recklessly, should escape liability if the ill or inebriated servant does the prudent thing of getting a proper substitute to tide him over his difficulty.

We should not be deterred from predicting that the New York Court of Appeals would predict that the Supreme Court of Ohio would reach this sound result by the Restatement of Agency 2d, § 241b. This begins by telling us that authority in a servant to transfer to another the custody of an instrumentality entrusted to him may be found in "an emergency, as where he became disabled," a statement sufficient to cover this case. However, the next sentence proceeds to qualify this by saying that liability of the master (save for negligent choice by the servant) depends on whether the servant is authorized to employ the substitute as a new servant or simply to entrust the instrumentality to him as a bailee—a distinction rejected, as the Reporter's Notes recognize, pp. 381-2, by about as many states as accept it. See, e. g., Emison v. Wylam Ice Cream Co., 215 Ala. 504, 111 So. 216 (1927); Farrell v. Pinson Transfer Co., Ky., 293 S.W.2d 170 (1956). The distinction appears to be a residuum left by the maxim *delegatus non potest delegare,* which, however appropriate to the chariot, does not always achieve a just result when applied to the automobile. It seems also a continued reflection of the somewhat restrictive notions of the original reporter, which gives inadequate recognition to the concept of "inherent authority", § 8A, developed by his successor and applied elsewhere in the Restatement. The view that my brothers would have the New York Court of Appeals attribute to the Supreme Court of Ohio is also irreconcilable in principle with the many instances where the master is held liable in tort when the servant has violated instructions or has engaged in intentional wrong-doing. See 2 Harper & James, supra, at 1374–76. Federal courts will better fulfill their role in the determination of questions of state law, still undetermined by the state courts themselves, if they make their predictions in the light of principle and of developing trends rather than by a nose-count of decisions of intermediate appellate courts. Compare Mr. Justice Frankfurter's concurring opinion in Bernhardt v. Polygraphic Co., 350 U.S. 198, 208–212, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

I would reverse.