## EAST OHIO GAS CO v FONDAS

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 7, 1932

Kennedy, Manchester, Ford, Bennett & Powers, Youngstown, for plaintiff in error.

Wilson, Hahn & Wilson, Youngstown, and Shermer & Goldstein, Youngstown, for defendant in error.

FARR, J.

It is not claimed here that the Company ever authorized the use of the car except by implication. It is conceded that his contract of hire did not involve the use of the car. True, the Gas Company had employs who used cars or motor vehicles about their work, but it is claimed that when the company instructed a new employe, that it instructed such new employe not to use an automobile. The automobile in question was purchased by Chismer. It was owned by him. There is no direct testimony in this record going to show that the Company knew that he owned a car. Matt Young, the claim agent, did not know until after the accident that Chismer owned a car. True, he drove it to the office at the time of beginning work and at the conclusion of his day's work, but not always. It is claimed that perhaps two or three times a week he used the car but used it for his own convenience, and that at other times he walked. Upon the day in question when he had received his collection cards he was given street car tickets, as above stated, for his transportation to the area in which he was to work that day. The car was used as a matter of convenience to Chismer, but it is claimed that the Gas Company must have known of the use because it is said that it may be assumed that the Company saw the car when he drove to the office in the morning, and again in the evening, and having known that he used the car, that the Company impliedly consented to its use, so it is said, and for that reason became responsible for the injury to this little boy.

This case was exhaustively briefed and well presented in argument on both sides, and it presents an interesting question, the Company resting its claim upon the fact that it never authorized the use of the car and therefore is absolutely absolved from liability. On the other hand, as stated, it is claimed that the Company must have known that the car was so used and having known it, it impliedly consented to its use.

Many authorities were cited upon both sides of this case and upon examination of the same not one case was found that treats the proposition as to the liability of the company providing it never authorized the use of the car. These are some "guideposts" along the judicial trail, but these may be summed up to this effect, that thus far the courts have gone on record, at least by the weight of authority, that there must be the power of control in the master before the master becomes liable for the servant's use of an instrumentality that causes an injury.

A case of interest in this connection is **Railway Company v Little, 67 Oh St, 91,** which in the second paragraph of the syllabi it is said:

"The test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether such act was done by the servant while engaged in the service of and while acting for the master, in the prosecution of the master's business."

And on page 101 of the opinion it is said:

"A master has the right to select and choose his agents and to determine himself, and to assign to the servants so selected, their respective duties, and no assumption by an employe of duties not assigned to him will bring those duties within the course or scope of his employment as defined by the master, and when an act is not within the scope of a servant's employment it cannot be within either the express or implied authorization of the master."

The foregoing is not precisely upon the point, but reflects somewhat upon the principle involved here. A case widely recognized, and one decided in this jurisdiction, is **Coal Company v Rivoux, Admr., 88 Oh St, 18,** and where it is held:

"The owner of an automobile is not liable in an action for damages for injuries to or death of a third person caused by the negligence of an employe unless it is proven that the employe at the time, was engaged upon his employer's business and acting within the scope of his employment."

Perhaps no case in this jurisdiction has been more widely noted and cited with approval than this Rivoux case. Another case in this jurisdiction and of interest here is **Nage v Kangesser, 32 Oh Ap, 527.** The first proposition of the syllabus reads as follows:

"Where employe struck plaintiff while employe was driving his own automobile on way to work, master was not liable under doctrine of master and servant, since employe was not an employe in the performance of any duty in behalf of master."
"2. Master can not be held liable for employe's injuries to third person unless

employe's act is part of an actual duty connected with employment."

Another case in Ohio is **Zarn, Admx. v Dominique, 39 Oh Ap, 442; (10 Abs 28)**:

"Master is liable for servant's act only if act was done in service of, and while servant was acting for, master in master's business.

Where employe driving father's automobile met employer and was informed where to report for work, employer held not liable for accident occurring while employe was proceeding to such place."

The facts in each of these two cases are not precisely the same as in the instant case but are of interest in this connection. In the latter case an employe was driving to a place where his uncle was engaged in plastering. An accident occurred on the way and it was held that the master was not liable. This subject has been extensively treated in other jurisdictions.

A case of interest is McVaughen v Railway Company, 274 SW, 97, where the second proposition of the syllabi reads:

"Presumption that chauffeur, using automobile in business of employer, is acting within the scope of his employment when injury is done to another by negligent driving, does not prevail where employe is driving his own automobile, but in such case burden falls upon one alleging negligence to show that chauffeur was acting within scope of employment."

It is clear that Chismer returned from his home to his work. If he was authorized, expressly or impliedly, to use his own car it probably would be within the scope of his employment. Another case of interest here is Goldsmith v Chesbrough, 113 Atl., 285, a Maryland case, where the first proposition of the syllabi reads:

"The mere fact that the instrumentality which occasioned the injury did not belong to the master will not preclude recovery, if the other circumstances require the inference that the tort complained of was within the scope of the servant's employment; the question being whether the use of the instrumentality was or was not authorized, expressly or impliedly, by the master."

The foregoing furnishes a fairly clear statement of the rule recognized by the weight of authority. The second proposition reads:

"In action for injuries caused by negligent operation of an automobile driven by defendant's collector, who owned the automobile, evidence held insufficient for submission to the jury of the question whether the defendant, either expressly or impliedly, authorized the driver to use the automobile in the discharge of his duties."

Another case is that of Kennedy v Chemical Company, in the 4 SW Rep. 2nd Series, at 354, and again in the case of Railway Company v Robbins, 123 So. 12. These cases are of much interest and upon examination of the same one is confronted with the conclusion reached by these several courts that only where the master has power of control over the instrument that causes the injury is he liable. So it is observed in Vol. 7-8 Huddy on Automobile Law, 9th Ed., §133, p. 348, as follows:

"A master or employer may be liable for the negligence of his servant or employe in the course of his employment, though the employe is using his own car. But in order to establish liability in such a case, it must appear that the relation of master and servant existed between the parties, in the sense that the master had the right to control the servant's conduct, that the negligent act was committed within the course and scope of the servant's employment, and that the use of the automobile was expressly or impliedly authorized by the master."

As to implied or authorized use it is said in 42 C.J., 1128, that:

"Where with the express or implied assent of the employer, an employe uses a vehicle which the employe owns in the discharge of his duties, the employer will be liable for an injury occasioned by its negligent operation by the employe while acting in the scope of his employment. The employer is not liable where at the time of the injury the employe is not acting within the scope of his employment, nor is he liable unless he has either expressly or impliedly authorized the use of the vehicle, or where he is merely the hirer of the vehicle without control of the manner of its operation."

See also **Schickling v Publishing Company, 115 Oh St, 89.** A case of considerable interest in this connection is Wesolowski v Life Insurance Company, by the Supreme Court of Pennsylvania not yet published.

The last paragraph of the notes of said case read as follows:

"The employer was indifferent as to whether Adams walked, rode a bicycle or operated a motor car to reach the people with whom he transacted business. If Adams had chosen to walk from person to person with whom he had his employer's business to transact, and in walking he had negligently knocked over and injured another pedestrian, it could not reasonably be contended that his employer should respond in damages for Adams' negligent pedestrianism. So to hold would be to construe the phrase 'respondeat superior' beyond its fundamental meaning and to carry its principle to absurd lengths and to consequences forbidden by every sound consideration of public policy."

But, it is said that by implication the company in the instant case authorized the use of this automobile by Chismer. On the morning of the day in question, Chismer drove his car near the plant. It is not shown whether Matt Young saw him, he being the claim agent, nor is it shown that his office was in sight of where the car was parked. It is not disclosed that any member of this company ever in any way had any knowledge that Chismer was driving the car, but upon this morning in question he was given street car tickets for the purpose of transporting him to the north side of the city of Youngstown where the district in which he was to make collections was located. The delivery of these tickets by the Company surely indicates that it did not expect Chismer to use his own automobile, or any other automobile; that it expected him, in accord with their custom to use the tickets that they gave him upon this occasion. Chismer accepted the tickets. What would this conduct imply? Chismer knew that he would have no right to use those tickets for his personal benefit or personal trips; therefore, did he not impliedly say to his employer, "I accept your tickets. I will use them going to the area of my employment"? There was nothing in this conduct which implies knowledge upon the part of the Company or consent that Chismer was to use his automobile in making these trips, no provision in the contract of employment, no tires were furnished, no gasoline provided. It was wholly a matter of Chismer's choice, and by his acceptance of the tickets he impliedly agreed with his employer that he would use them on his journey to the north side to make these collections, and, as before stated, there is nothing disclosed by this record to show that a member of the Company, or any of his superiors, knew that he used an automobile. Even Matt Young, as above stated, did not know of its use until after the accident. But suppose the company did know, suppose they knew that for his own convenience he drove his own car, at his own expense, to the place where he made collections, there he parked it and walked from house to house until the district had been covered, then he returned to his parked car and drove away for his own convenience.

After having carefully examined these cases and authorities, the conclusion is that it would be extending the doctrine of master and servant, or respondeat superior too far to say that under such circumstances this company must stand responsible for an injury which occurred because this man, for his own convenience, without the direction of his employer, and so far as the record shows, without their knowledge, to hold the Company responsible would be extending these doctrines too far. Therefore, the conclusion is that the judgment must be reversed because contrary to law, and because the trial court erred in refusing a directed verdict, and final judgment will be entered for plaintiff in error.

ROBERTS and POLLOCK, JJ, concur in the judgment.