## PANTELL v THE SHRIVER ALLISON CO

Ohio Appeals, 2nd Dist, Mahoning Co

Decided December 30, 1938

John Ruffalo, Youngstown, for plaintiff-appellant.

William E. Pfau and David C. Haynes, Youngstown, for defendant-appellee.

## OPINION

By CARTER, J.

This cause is before this court on appeal on questions of law. The action below was one in damages for personal injuries claimed to have been sustained by the plaintiff. The parties will be designated as plaintiff and defendant.

The operative facts are substantially as follows:

The defendant is on Ohio corporation

engaged in the undertaking business in the city of Youngstown, and licensed under the provisions of §1335-5, GC, to engage in the business of directing and supervising funerals for profit.

A man by the name of William Waddington, residing in the city of Youngstown, died, and the defendant company was employed to take charge of the body and the funeral arrangements usually incident to burial, and under the arrangement defendant was to furnish the casket, funeral services, the hearse, a car for the minister, a car for the pall bearers and a car for the family, with drivers therefor. These three cars otherwise than the hearse were the only cars to be furnished by defendant. As usual at funerals, a large number of cars were owned and driven by various friends desiring to attend the funeral which was held at the home of the deceased. It appears that the Waddington family made up a list of car owners who had volunteered the use of their cars to the family to convey relatives ordinarily designated as mourners, from the house to the place of burial, which place of burial was to be in a certain cemetery located on Belmont avenue, Youngstown. These particular cars hereinbefore mentioned, including the volunteered cars, were numbered consecutively from one to ten. The defendant, through its assistant, arranged these cars in the procession accordingly and the volunteered cars were to follow the other three cars furnished by defendant in proceeding to the cemetery. Others proceeding to the cemetery followed these designated cars in any order they saw fit. Funeral stickers were placed on the cars by the undertaker and following the services at the Waddington home the procession formed in line to proceed to the place of burial, the assistant assisting the mourners into the three cars defendant was to furnish, and also those designated to ride in the volunteered cars. The plaintiff had come to the Waddington home as a mourner and was assisted into a car known as the Masterson car. Masterson also attending as a mourner, driving his own car and was not assigned a number but followed among the cars not listed by the family. A man by the name of James Marsh, an acquaintance of the deceased, on the day before the the funeral, visited the Waddington home to express his sympathy to the family, and at that time offered to the family the use of his car if needed to transport mourners from the home to the cemetery. This was brought to the attention of the undertaker, who instructed Marsh where

to place his car in the procession, the Marsh car being assigned as car No. 10 in the procession and certain mourners or relatives were placed in the Marsh car. Stickers were placed on all cars in the procession. The undertaker drove the first car and led the procession on its way to the cemetery. The route taken was west on Madison avenue to Wick avenue, thence north on Wick avenue to Broadway, thence west on Broadway to Fifth avenue and on to the cemetery. For some reason the Marsh car became separated from the procession at or near the intersection of Madison and Wick avenue, and Marsh, instead of following the procession up Wick avenue, proceeded westerly from Madison avenue to Elm street, thence north on Elm street to the intersection of Elm and Broadway, where the collision occurred between the Marsh and Masterson cars, plaintiff being a passenger in the Masterson car at the time. At the conclusion of plaintiff's evidence a motion was made by defendant for a directed verdict, which motion was by the trial court sustained. From this action of the trial court appeal is prosecuted to this court.

Was the court in error in sustaining this motion? Was the relationship, if any, between defendant and Marsh such under the facts as above recited as to create liability on the part of the defendant under the doctrine of respondeat superior. In other words, was there a factual question presented for consideration and determination by the jury? There is no material dispute as to the facts involved. Marsh tendered the use of his car to the family and Masterson did the same. Neither of these cars were owned or operated by defendant. Defendant did not employ Marsh or Masterson to furnish or drive these cars. The contract between the Waddington family and defendant with reference to the furnishing of cars was that defendant was to furnish three cars, and no more, to transport relatives and mourners to and from the cemetery. Neither Marsh nor Masterson were to be compensated in any way financially by either the Waddington family or the undertaker for the services performed. Such were entirely voluntary, not to the defendant but direct to the family. Though the undertaker had general charge of the funeral and had the cars placed according to their numbers and assisted and directed the mourners and relatives into these cars according to data furnished it by the family and placed a sticker on not only his three cars but ap-

parently all other cars which were to proceed in the procession to the cemetery whether the cars carried numbers or not. Liability is urged against the defendant by reason of the fact that defendant had general charge and supervision of the funeral and that the acts on the part of the undertaker, as above enumerated, presented a factual question to be determined by the jury, and a number of cases have been cited by counsel for plaintiff in an attempt to support this contention. However, a perusal of these cases will disclose that the facts upon which these decisions are based are not identical with the ▮▮▮▮▮ ▮ facts in the instant case.

Generally the relation of master and servant exists where one person for pay or other valuable consideration enters into the service of another and devotes to him his personal labor for an agreed price. Measured by this rule, the relationship of master and servant did not exist in this case. The basis of the doctrine of respondeat superior is let the master or superior answer; that is, in certain cases the master is liable for the wrongful acts of his servant and a principal for those of his agent. In the case of Braun v Averdick, 113 Oh St, 613, in the course of the opinion in that case the court say:

"The test of a master's liability lies in proof of the fact that if the negligent act was done by a servant, it was done in the course of his master's employment and while engaged in the service of the master."

A servant is a person in the employ of another and subject to his control as to what work shall be done and the means by which it shall be accomplished. In the case of Gravatt v State, 25 Oh St, 162, the court say:

"When a person in the employment of another is in the discharge of his duty subject to the immediate direction and control of his employer, he is properly described as a servant."

Marsh was not employed as a servant of the defendant, neither was he under the direction and control of defendant. Neither did the defendant have power to discharge him from the service that he was performing. To be sure, Marsh would be expected to follow in the procession; nevertheless he was not compelled to do so and no authority or control existed in the undertaker to compel Marsh to do so. If he saw fit he could drop out of the procession without any liability in any way to the undertaker for breach of contract, and no liability would have been created in favor of the undertaker if he, Marsh, had not taken the mourners or the relatives to the funeral at all. There was no relationship of master and servant or principal and agent created by this arrangement. The defendant was not bound to furnish transportation for all the relatives and mourners, but, according to the contract, was to furnish three cars only for that purpose. The other cars were merely volunteered as a courtesy to the family, and not for the benefit or use of the undertaker, and to hold that due to the fact that these cars were placed in the procession in numerical order by the undertaker, and numbers and stickers placed thereon and the passengers to be transported were conducted and assisted to these cars created the relationship of master and servant or principal and agent so as to establish liability on the part of the defendant, would, we think, be carrying the doctrine of respondeat superior to an illogical and unwarranted degree. Had the undertaker agreed to furnish transportation to all the relatives and mourners and had employed Marsh for the purpose of transporting some of the relatives and friends, another question would be presented. A recent case decided by the Supreme Court of this state has been cited by counsel for plaintiffs, Sack v Nunn, 129 Oh St, 128, 1 OO 437. The instant case is clearly distinguishable from the Sack-Nunn case supra. The distinguishing features are so obvious that reference is unnecessary. However, we will point out some of the distinguishing features. First, the undertaker in the Sack-Nunn case was to conduct the funeral generally, agreed to furnish transportation for the family and friends of the deceased to the cemetery and back to the home of the decedent; that nine cars were to be furnished by the undertaker at $9.00 per car. Two of these cars were owned by the defendant, the other seven being owned by other automobile livery

concerns from whom they were hired by the undertaking company. These seven cars to be operated by persons employed for that purpose by the owners of the respective cars from whom they were hired. Other facts involved are somewhat similar to the case at bar. On the return trip to the home a passenger in one of these hired cars was injured and the question presented was whether under these circumstances a jury question arose. The court held a factual question was presented for the determination of the jury. We are in complete accord with that holding.

The court further say in the course of its opinion:

"The weight of authority in this country seems to be to the effect that where an undertaker in conducting a funeral furnishes a conveyance and driver for the transportation of members of the family to the funeral and return therefrom, he is liable in damages for injuries to a member of the family so transported resulting from the negligent operation of the conveyance by the driver, even though the conveyance and its driver are hired by the undertaker for such purpose from a third party who as owner thereof maintains the conveyance, provides the driver and pays him his wages."

The first paragraph of the syllabi in this case is as follows:

"When an undertaker under contract to conduct a funeral and to transport the funeral party to a cemetery and back to the home hires a number of cars and the drivers from a third party, who maintains the cars and pays the wages of the driver, but the undertaker places such cars and drivers in the funeral procession and gives written instructions to such drivers with reference to safety and rules of operation and through the operation of one of such hired cars by its driver a passenger of such car is injured on the return trip from the cemetery, the question of the control of such driver by the undertaker as affecting his liability for the injury of such passenger under the doctrine of respondeat superior is one of fact for the jury under proper instructions from the court."

In the Sack v Nunn case one of the vital differences is that the undertaker in that case was to furnish transportation for the relatives and was paying the drivers. Had there been no such a contract in the Sack-Nunn case, a different question would have been presented for determination by the Supreme Court. The court in that case had no such a case as the instant case and the fact that the court made some statements in the opinion in that case which segregated and standing alone from all the facts involved might be construed to indicate a liability in the case at bar, however what the court said must be taken and considered with all the facts therein presented. For instance, the court say:

"The fact that the undertaker placed a sticker on the car was an indication of some responsibility in this respect."

Certainly we can not infer that the court held or intended to hold that the fact that a sticker was placed on the car established liability or a jury question. If so, then and in that event the undertaker would become liable for the negligent driver of every car in the procession upon whose car a sticker had been placed. Certainly the holding is not to that effect; this was one of the facts, and one only of the many involved in that case, and the holding was that taking all the facts into consideration collectively, there was presented a jury question.

Cases are also cited by plaintiff applying the doctrine of respondeat superior for a borrowed car. No such situation is presented in the instant case, as the car was not borrowed nor hired by the defendant company. These cases are inapplicable.

In the case of Standard Oil Co. v Anderson, 212 U. S. 215 the court say:

"The simplest case and that which was earliest designed was where horses and a driver were furnished by a livery man. In such cases the hirer though he suggested the course of the journey and in a certain sense directs it, certainly does not become the master of the driver and responsible for his negligence unless he specifically directs or brings about the negligent act."

In Ohio Jurisprudence, Vol. 26, pages 620, 621, the author states:

"The liability of one person for damages arising from the negligence or inexperience of another on the principle of respondeat superior, is confined in its application to the relation of master and servant or of 'principal and agent'. In order, then, to permit a recovery, in such case, it must be shown that the relation between the parties sought to be held liable and the person doing the act complained of was that of master and servant, or of principal and agent, in reference to the very act complained of. The maxim 'respondeat superior' does not apply where this relation does not exist. The direct coincidence and coexistence of the rule of respondeat superior with the relation to which it belongs is an unvarying test of its application.

"As to third persons, the relation of master and servant does not necessarily depend on a contractual relation, but may be created by holding out one as employee. On the other hand, a person may contract with another to do certain work, without becoming his servant. Strictly speaking, the relation of master and servant can exist only when the principal selects the servant, and not only retains the control over all his operations but also has the power to dismiss him at any time for misconduct. It is not, however, essential that the master's control should be in fact exercised; if the employer has the authority to the extent indicated, the fact that he leaves details to the discretion of the servant does not alter the relation of the parties. But a reserved right to direct as to the quantity of work to be done, or the condition of the work when completed, is not a right to control the mode or manner of doing the work. The mere fact that one is employed by another does not render the latter liable for all acts of the former. The relationship and the master's liability depends upon whether the person who did the injury complained of was acting under his employer's control or direction, in doing the work from which the injury resulted. If the person so acted, he is a servant and the master is responsible; otherwise, there is no such relation and he and not the master, is liable for the injury."

### 29 Corpus Juris:

"The relation of master and servant exists where the employer selects the workman and may remove or discharge him for misconduct and may order not only what work shall be done, but the mode and manner of performance. To constitute the relation of master and servant for the purpose of fixing liability on the former for acts of the latter under the doctrine of respondeat superior, it is indispensible that the right to select the person claimed to be a servant should exist. Furthermore, something more than the mere right of selection is essential to the relation. This right must be accompanied with the power and duty to control the alleged servant while in his employ. This is, 'it is said one of the principal tests of the relation.'"

In the case of Babbitt v Say, Admr., 120 Oh St, 177, third paragraph of the syllabi is as follows:

"The rule of respondeat superior rests on the power which the superior has a right to exercise and which for the protection of third persons he is bound to exercise over the acts of his subordinates. It does not apply where the power of control does not exist, and in the absence of an agreement to the contrary the power does not ordinarily exist where there is no right of selection or discharge of such subordinate."

In the case of East Ohio Gas Company v Fondas, 13 Abs 150, the first paragraph of the syllabi is as follows:

"In order to render a master liable for injuries from an instrumentality such as an automobile used by a servant, there must be a power of control in the master."

In the light of the facts in this case, and the law applicable, to which reference has hereinbefore been made, we hold there was no liability on the part of the defendant company, that there was no factual question presented for the determination of the jury, and that the trial court was not in error in directing a verdict in favor of the defendant at the conclusion of plaintiff's evidence. Judgment of the lower court affirmed.

NICHOLS, PJ, and BENNETT, J., concur in the judgment.