Including Cases of October Term, 1920, January and April Terms, 1921.

## JOSEPH GOLDSMITH

*vs.*

## HARRY P. CHESEBROUGH.

*Master and Servant—Unauthorized Use of Automobile.*

That the instrumentality which occasioned the plaintiff's injury, while in use by defendant's servant, did not belong to defendant, does not preclude recovery if its use was authorized by defendant. p. 8

In an action for an injury caused by an automobile which belonged to defendant's servant and was being used by him in soliciting business for defendant, *held* that the evidence failed to show that defendant either expressly or impliedly authorized the use of the automobile, so as to make him liable. pp. 2-9

*Decided February 11th, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

The cause was argued before BOYD, C. J., THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Clifton S. Brown,* with whom was *Emanuel E. Ottenheimer* on the brief, for the appellant.

*William L. Marbury* and *L. Wethered Barroll,* for the appellee.

PATTISON, J., delivered the opinion of the court.

The appellee, Harry P. Chesebrough, brought suit in this case to recover for personal injuries sustained by him caused by the alleged negligence of one Robert E. Talbott, an al-

leged servant or employee of the defendant, in the operation of an automobile at or near the corner of Baltimore and Schroeder Streets in the city of Baltimore.

The declaration alleges that, on or about the 10th day of March, 1920, while the plaintiff was crossing from the pavement on the north side to the pavement on the south side of Baltimore Street, at the time exercising due care and caution in so doing, the defendant, by his agent or servant in charge of an automobile, who was operating the same "in a reckless, fast and negligent manner," caused said automobile "to run against and upon the plaintiff," thereby causing him to suffer serious and permanent injury.

The case was tried by a jury in the Superior Court of Baltimore City and resulted in a verdict and judgment for the plaintiff, from which judgment this appeal is taken.

At the conclusion of all the evidence, the defendant asked for an instruction directing a verdict for him because of a want of evidence legally sufficient to entitle the plaintiff to recover, but this prayer was refused.

The defendant contends that if the said automobile, owned by Talbott and his wife, and not by the defendant, was used by Talbott in the performance of the duties required of him under the terms of his employment by the defendant, its use was not only unnecessary, but was without authority from him, the defendant, either expressed or implied, and that such use was without the knowledge and the consent of the defendant.

The evidence discloses that at the time of the accident resulting in the injury complained of, the defendant was engaged in the "house-furnishing and clothing business," at the corner of Baltimore and Gilmor Streets, in the city of Baltimore, and that on the 3rd day of March, 1920, and prior thereto, he had in his employ some ten or more solicitors and collectors, each confined to a particular locality of the city. These men each morning met at the defendant's place of business, and from there went in the street cars to the re-

spective territories worked by them, and at the close of the
day they returned by the cars to the defendant's store, and
from there went to their respective homes.

In going from the defendant's store to the territories as-
signed to them, and in returning therefrom to his store in the
evening, their car fare was paid by the defendant. After
reaching the localities in which they worked, they practically
went from door to door, or at least the calls made by them
were at places in close proximity to each other. As described
by the defendant "the calls were laid close together" and in
some of them, he said, the collector "if he had just to go over
the territory, he, by walking, could go over it four times in
one day."

It was on the 3rd day of March, 1920, that Talbott en-
tered the employment of the defendant as collector and solici-
tor to do the work we have described in the territory assigned
to him. At that time he was living on Walnut and Second
Avenue near Rognel Heights, in the northwest section of the
city, and was at the time, with his wife, the owner of said
car, which he used in riding to and from his work in the
city.

The terms of Talbott's employment must be ascertained
from his and the defendant's testimony, and it is to the legal
sufficiency of this testimony, as tending to show that he was
authorized by the defendant to use the automobile, that said
instruction asked for was directed.

It will be first stated that the evidence conclusively shows
without contradiction that the use of the car was unnecessary
in going from defendant's store to the territory worked by
Talbott, or in working the territory after he had reached it.
In fact the record discloses that he, like others, was paid so
much per day for car fare in going to and in returning from
his territory; and the evidence is undisputed that, while at
work, the automobile was of no advantage to him, because of
the numerous stops he was required to make at places not far
removed from each other.

Talbott received twelve dollars per week and was compensated for each sale made by him. The automobile, he stated, was used by him in driving in and out from Rognel Heights with his father-in-law, who also worked in the city, and at times in going to and from his territory, and on occasions in collecting and soliciting, although he said he did not use the machine at all for the first two weeks after the commencement of his employment; but he subsequently modified this statement by saying "not regularly." When asked by counsel for plaintiff "what understanding did you have about the use of this machine?" he replied, "I told him (Goldsmith) I had a machine, and he * * * said, 'Well, I would not use it for quite a while for a couple of weeks or so,' for reasons that he had of his own, in regards to a solicitor that I was then going with running over the routes. And I mentioned the fact to him that I could use it and get around and while he did not agree with me or did not disapprove, why, I went to work and used the machine."

"Didn't you tell him you had a machine, and he said, 'I think that will help and will be glad to have you use it?' A. I would not say positive whether he did or not. Q. Well, what did he say? A. I told him that I had a machine and I said in case any time his trucks break down or anything like that, why we could make delivery if it was quick and had to go out, which we did. Q. And you told him that you could use the machine in making collections, didn't you? A. Yes, sir. Q. He never made any objection to you using the machine for that purpose, did he? A. Never made any objection, and he never approved."

He was shown a paper purporting to contain a statement of what he had said to Mr. Barroll, one of the counsel for the plaintiff, which Mr. Barroll had reduced to writing, and which Talbott had signed. He was asked if it was his signature and he answered that it was. He was then asked if Mr. Goldsmith did not say to him when he told him that he had the machine, "I think that will help and I will be glad to

have you use it." His reply was "I would not say that it was the exact words, because I gave it to Mr. Barroll offhand, and Mr. Barroll wanted me to come over to his office right after I was up to the traffic court."

"Q. Yes, he asked you to make a statement of what you knew about the case? A. Yes. Q. Then you do not remember the exact language? A. The exact words I could not say. Q. Well, was that not substantially what he said? A. About that."

The defendant, Goldsmith, testified that the duties of Talbott under his employment were those of collector and solicitor; that he was assigned to a territory in which to work and where he solicited orders on March 10th, but at the time of the accident, which occurred late in the afternoon of that day, after the hour when the solicitors and collectors had ordinarily returned from their work to the defendant's place of business, he was at a place far removed from the territory to which he was assigned.

The defendant testified that Talbott, like all the other collectors and solicitors, was allowed car fare "to the route and back from the route"; that he was the only one of all the collectors that used a car, if he used one, in collecting or soliciting; that when Talbott applied to him for work he said that he had been employed by Bartlett & Hayward Co. and the defendant expressed some apprehension about his being able to pay him the wages he had been receiving from them, and said "he could not pay him wartime wages." Talbott then said, "Well, I have a little money," and defendant asked him what he could work for, and he said "about twelve or thirteen dollars per week." The defendant expressed surprise that he, with a wife, could live on so little, and Talbott said, "I have got a thousand dollars, and I have got a Ford car; * * * I can go around in," and defendant said, "Well, Mr. Talbott, there would be no use much of that because I would not want you to use any Ford for two or three weeks anyhow, and I do not see where you could use it, because we have a delivery

truck to deliver." Talbott, he said, came to the store at times in his machine, but defendant did not know that he used it when engaged in collecting and soliciting, and did not know he used it on the day of the accident for such purposes, but if he did so use it on that day it must have been the first time. That he never learned of the accident until July 1st, after Talbott had left his employ. Talbott never reported the accident to him, and not until July 1st did he have any knowledge of it.

In *Wilson* v. *Penna. R. R. Co.*, 63 N. J. L. 385, it is stated in the syllabus, which correctly states the finding of the court, that: "The plaintiff was struck by a wagon belonging to the Adams Express Company, driven by a person employed by the Pennsylvania Railroad Company to carry United States mail, which was, in fact, in the wagon, but which previously had been carried on foot or in a push cart. Held, that as there was no proof that the defendant had authorized its servant to use a wagon, the plaintiff should have been non-suited."

In *Stretton* v. *City of Toronto,* 13 Ont. Rep. (1887) 139, it appeared that plaintiff was knocked down and severely injured by the negligent driving by one Bessey of a horse and buggy. This horse and buggy were not the defendants', but were the private property of Mr. Coatsworth, the city commissioner. Bessey was a servant of the defendants. A hydrant had burst, and Foley, a servant of the defendants, who was attending to it, sent Bessey to his (Foley's) house for a wrench. Bessey, on his way there, without knowledge or authority of Foley, and without the knowledge or authority of Coatsworth, took the horse and buggy, which he found standing in front of Coatsworth's office, for the purpose of more speedily getting the wrench, and in driving for it ran down plaintiff.

The court in that case said: "The defendants were sought to be charged for the negligent driving by Bessey, their servant, of a horse and buggy, causing injury to the plaintiff, and

in order to establish this it was necessary for the plaintiff to show that the driving of the horse and buggy was in the course of Bessey's employment as the servant of the defendants. This he failed to do. Bessey, it is true, was the servant of the defendants, and in going for the wrench was acting in the course of his employment; but he was not acting in the course of his employment in going for it with a horse and buggy which he had wrongfully possessed himself of without the knowledge or consent of the defendants, and they were consequently not liable for his negligent driving of this horse and buggy."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Robinson*, 117 Ark. 37, the plaintiff was injured by being run into or struck with a bicycle ridden by a call boy in the employ of the railway company. It was his duty to call the different train crews as directed, there being three or four of them to be called each day. The division foreman, on the morning of the injury, directed him to make calls of certain crews, and while on his way to do this the injury was inflicted.

The boy was not employed to perform his services on a bicycle nor provided with or required to have one. None of his predecessors had ever attended to the duties of calling the train crews with the aid of a bicycle. He rode from his home, which was beyond the call limits of the station, on his wheel when the weather conditions were favorable, and frequently performed his services of notifying the train crews by riding the wheel instead of walking.

The court in that case said: The defendant railway company "did not furnish a bicycle for his use in the service, nor require him to provide one therefor, and the duties imposed upon him to notify the other employes did not necessitate such dispatch in reaching them as required the use of a bicycle. It was employed by the caller to facilitate the performance of his duties mayhap, and certainly for his own convenience, and the mere fact that the agents of the railway company knew that the call boy was using the instrumentality

in the performance of his service was not an implied authorization of the use thereof by the master nor sufficient evidence of the necessity therefor.  If the service required of the call boy could not have been performed in the time given therefor without the aid of the instrumentality used (the bicycle), it would have occasioned a necessity, and the knowledge by the agent of such use in the performance of the service would have amounted to an implied authorization thereof, making the railroad liable for a negligent injury therefor."

The law that should control in cases of this character we think is well stated in *Labatt's "Master and Servant,"* second edition, page 6888, where it is said:  "If the other circumstances involved in a case are consistent with, or require, the inference that the tort complained of was within the scope of the servant's employment, the mere fact that the instrumentality which occasioned the plaintiff's injury did not belong to the master will not preclude him from recovering damages.  The action is deemed to be *maintainable* or *not maintainable,* according as his use of the instrumentality *was* or *was not authorized,* expressly or impliedly, by the master."

The automobile, as shown by the evidence in this case, was used for the convenience of Talbott, and was not at all necessary in the performance of his duties under his employment by the defendant, nor was its use in any way beneficial to the defendant.  There is also nothing in the evidence tending to show that Talbott was authorized either expressly or impliedly to use the automobile in the service of the defendant at the time the accident occurred, if he was at any time thereafter authorized by him to use it.

Talbott testified that when he told the defendant he had an automobile he could use in connection with his work, the defendant replied, "Well, I would not use it *for quite a while, for a couple of weeks or so"* ; and the defendant testified when told by Talbott that he had an automobile he "could go around in" that he said to him, "There would be no use much of that because *I would not want you to use any Ford*

*for two or three weeks anyhow,* and I do not see where you could use it, because we have a delivery truck to deliver."

Talbott further says, "When I mentioned the fact to him that I could use it and get around, and, while he did not agree with me or did not disapprove, why, I went to work and used the machine." In this statement he evidently did not mean to convey the impression that the defendant did not disapprove of the use of the automobile at once, for in the preceding part of his answer to counsel's question, he says, the defendant objected to his using it *"for quite awhile, a couple of weeks or so."* Therefore, the time to which he alluded, in saying that he did not agree or disapprove of the use of the automobile, must have been the period commencing at least two weeks after the date of his employment, March 3rd, 1919. If so, such time was subsequent to the time of the happening of the accident, on March 10th, 1919, one week only after he entered upon his employment.

Talbott was also asked if Goldsmith did not say to him, "I think that will help and I will be glad to have you use it" (the automobile), and at the time was shown the written statement previously referred to, and was asked to refresh his memory by the use of it. In reply thereto he said he could not say the exact words. Q. "Well, was not that substantially what he said?" and the answer came "about that."

This evidence is so indefinite, uncertain and lacking in probative force that it is not, we think, legally sufficient to go to the jury as tending to show that the use of the automobile by Talbott was authorized by the defendant either expressly or impliedly; and the instruction asked for by the defendant, that the case be withdrawn from the jury, should have been granted. The judgment will, therefore, be reversed.

*Judgment reversed without a new trial, with costs to the appellant.*