REGAL LAUNDRY COMPANY, INC., *v.* A. S. ABELL COMPANY et al.
[No. 34, October Term, 1932.]

*Decided January 10th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Hiram C. Griffin,* for the appellant.

*Foster H. Fanseen,* with whom was *Charles F. Goldberg* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The accident out of which this case arose occurred on October 29th, 1930, between 9 and 9.30 a. m., at or near Jones Station, in Anne Arundel County, Maryland. An automobile owned and operated by Louis J. O'Donnell, traveling in a northerly direction from Annapolis toward Baltimore, collided with the plaintiff's automobile truck, which was being driven in a southerly direction by an employee of the plaintiff. As a result of the collision the plaintiff's truck was badly damaged. The plaintiff instituted suit in the Superior

Court of Baltimore City against Louis J. O'Donnell and the A. S. Abell Company, a body corporate, the owner and publisher of the Baltimore Sun. The case proceeded against the defendant O'Donnell, with the result of a judgment being entered against that defendant. The appeal is by the plaintiff from a judgment for costs in favor of the appellee.

The single exception contained in the record is to the ruling of the court on the prayers, which are as follows:

(a) "The court instructs the jury that the plaintiff has produced no evidence legally sufficient to entitle a recovery as against the defendant A. S. Abell Company, and the verdict of the jury must be in favor of the defendant A. S. Abell Company."

(b) "The defendant, the A. S. Abell Company, prays the court to instruct the jury that the uncontradicted evidence is that the defendant O'Donnell at the time of the accident was not the servant and agent of the defendant, the A. S. Abell Company, and the verdict therefore should be for the defendant, the A. S. Abell Company."

The effect of the court's ruling in granting these prayers was to hold that there was no evidence legally sufficient to entitle a recovery by the plaintiff, but, on the contrary, the uncontradicted evidence established that the defendant O'Donnell at the time of the accident was not the servant and agent of the defendant A. S. Abell Company.

The facts as contained in the record are simple and undisputed. They may be stated with substantial accuracy as follows: Louis J. O'Donnell, during the month of October, 1930, and up to the time of the trial, was employed by the A. S. Abell Company as a reporter. His duties during the month of October, 1930, were varied, and consisted of reporting the meetings and speeches held and made by the Democratic and Republican candidates for governor of the state, he being assigned sometimes with one and then with the other candidate. On October 28th, 1930, he was assigned by the appellee to cover a meeting held by the Republican candidates at Crisfield, Somerset County, and report the speeches of the statewide candidates made at that place. He went to Crisfield,

attended the meeting, reported the speeches of those candidates, and sent the information in to the Sun; and they published an article concerning that meeting. He left Crisfield about 11 o'clock on the night of the 28th and proceeded to Salisbury, where he spent the night, that place being on the only route which he knew, and which he took in returning to Baltimore. He left Salisbury about 5 o'clock the next morning and proceeded to Baltimore by way of the Claiborne-Annapolis Ferry, crossing that ferry in company with the Republican candidates who had addressed the meeting at Crisfield. He was driving his own automobile. Upon reaching Annapolis he proceeded on his way to Baltimore, to report to his employer and obtain directions for his future movements on that day. The accident happened between Annapolis and Baltimore; after which he went to Glenburnie, reported the accident, and asked for instructions, and was told by his employer to continue with the Republican candidates and cover their meetings in Frederick County, which were to be held in the afternoon of that day. This O'Donnell did, by accepting an invitation to go to Frederick in the car of one of the candidates, arriving about 1 o'clock in the afternoon. He knew they were going to Frederick County, but did not know where. The candidates had a schedule made for a week's program, and the Sun office knew the program. He could not say definitely whether he knew on October 28th that they were to be in Frederick the next day. On the 27th he had written an article which stated: "Tomorrow candidates will tour Somerset County and address a meeting at Crisfield"; the article then stated "they were scheduled in Frederick Wednesday 11.00 a. m.," but he could not state whether the last sentence was added at the office in Baltimore. In reply to a question as to when he first knew he was going to Frederick, he said: "I more or less suspected I would go all along, but I first knew definitely when I reached Glenburnie after the accident"; that he had been with these particular candidates two or three days before October 29th; that no definite arrangements were made between him and his employer for transportation while he was on this particular

trip covering the campaign; that his employer gave him an advance of money, he signed a slip, and they gave him maybe $50 or $75, maybe $100 "if they think he will have enough expenses"; that he traveled at their expense and at the end he accounted for it; that is the arrangement he had. "Q. Was there anything allowed you for the use of your automobile? A. Not definitely. If you did use your own car you were given transportation allowance of seven cents per mile." He further testified that that arrangement applied on this particular trip; that he used his own car and the A. S. Abell Company allowed and paid him seven cents a mile for this trip; that his employer published articles on October 28th, 29th, and 30th, 1930, written by him and signed either "L. J. O'D." or "Louis J. O'Donnell, staff correspondent of the Sun"; that these articles dealt with the meetings and speeches of the Republican candidates, including the meeting on October 27th, the meeting at Crisfield on the 28th, and the meetings in Frederick County on the 29th; that he does not recall any other way he could have come from Crisfield to Baltimore, does not know whether it is the customary way, but it was desirable for his purpose in order to stop in Salisbury; that he called the home office of the appellee from Glenburnie in order to notify them of the accident; that he talked with the assistant city editor and was asked by that individual: "What are you going to do?" "I said I was coming to Baltimore. He said, you probably will go with the Republican candidates. I said, I can go along with them right now; I am sure the Mayor (one of the candidates) will take me up with them. He said, yes, you are going to Brunswick; whereas the Mayor was bound for Frederick, and I thought if I got to Frederick I could get to Brunswick all right."

The city editor of the appellee testified that O'Donnell worked under his supervision, and witness was responsible for O'Donnell's assignment in October, 1930; that O'Donnell was assigned to cover the campaign at Crisfield on October 28th, and witness knew O'Donnell was to use his own automobile as the means of transportation to and from Crisfield;

that generally O'Donnell's duties were to cover the meetings to which he was assigned and report to the appellee, "simply to cover the meetings which they were holding. Q. Do you remember just what his assignment was when you made that particular assignment? How broad was it, do you remember? A. Simply to cover the meetings which they were holding, series of meetings traveling in various parts of the state. He was covering the meetings. He was not writing interpreting stuff; he simply was covering what happened at the meetings. At the same time we had a man out with the other side. Q. How long was this particular assignment to last? A. Until he was called off. He was not given a definite assignment for a certain period to travel with Broening. After they covered one section of the state they would call for instructions and then I would call them into the office or send them out with the candidates they were with."

This witness further testified that he did not personally know whether O'Donnell was reimbursed for the expense of the use of his car from Crisfield back to Baltimore, as he did not handle that expense account; that their plan is, when they send a man out of town, to make an estimate and give him a certain amount of cash, to be accounted for; that when the reporter returns from the trip he makes out a detailed expense account; that, if he has money left over, he returns it to the cashier, and, if he has spent out of his own pocket, the company reimburses him; that, when a man uses his car on company business, he figures the mileage and that goes on his expense account; that a reporter signs a statement that he has used the car on company business, but that the company does not check the speedometer; that O'Donnell had been on a weekly salary ever since he had been with the Sun.

Two contentions are made by the appellee: First, that O'Donnell was an independent contractor and not an employee; and, second, that, even if he be held to be an employee, he was not engaged in his master's business at the time of the accident. We do not think either of these contentions is sustainable. O'Donnell was in the general employ of the appellee as a reporter, and being paid a weekly

salary. During the political campaign of 1930 he was assigned by his employer to attend and report the proceedings held by the gubernatorial candidates sometimes with one party candidate and then with the other. On the 28th of October his assignment was to cover a Republican meeting held at Crisfield, whose candidates the next day were to hold meetings in Frederick County. The record does not disclose definite instructions that he go to Frederick County on October 29th, but his assignment was to continue with the candidates to whose meetings he had been assigned, "until he was called off." He had not been called off at the time of the accident, but was returning to Baltimore to receive any further or different instructions. He promptly reported the accident to his employer, and was told to find some means of transportation and continue the assignment to the meetings to be held in Frederick County. There can be no doubt that O'Donnell's employment continued so long as he was engaged in furthering his employer's business; and it is equally certain that he was engaged in his employer's business without regard to whether, at the time of the accident, he was under orders to continue with the candidates to Frederick, or was returning from Crisfield to the office of his employer for the purpose of receiving future instructions. The evidence is that he was returning to Baltimore for further or additional instructions.

If O'Donnell had been furnished an automobile by his employer with which to make the trip to Crisfield and return, it could not be seriously contended that his employer would not be liable. Therefore the contention that O'Donnell was an independent contractor rests upon the single fact of his using his own car for transportation purposes. Such a contention was met with and answered by this court in the case of *Goldsmith v. Chesebrough,* 138 Md. 1, 113 A. 285, 288, wherein it was said: "The law that should control in cases of this character, we think, is well stated in *Labatt's Master and Servant* (2nd Ed.), p. 6888, where it is said: 'If the other circumstances involved in a case are consistent with, or require, the inference that the tort complained of was within

the scope of the servant's employment, the mere fact that the instrumentality which occasioned the plaintiff's injury did not belong to the master will not preclude him from recovering damages. The action is deemed to be maintainable or not maintainable, according as his use of the instrumentality was or was not authorized, expressly or impliedly, by the master.'" Applying that principle to the facts presented by this record, it must be conceded that, although the automobile which O'Donnell was operating at the time of the accident belonged to him, it was an instrumentality the use of which was known to the employer and was expressly or impliedly authorized by it. There is no contradiction of the testimony of the employer that they knew O'Donnell was going to use, and was using, his own automobile on the trip to Crisfield and return, on or in furtherance of its business, under an agreement to pay seven cents a mile for its use, and which payment was made. In *Berry on Automobiles* (6th Ed.), p. 1146, sec. 1385, the general statement is made: "If the employer expressly or impliedly authorized the use of the automobile by the employee in the pursuit of his duties, the employer is liable to third persons for injuries resulting from its negligent use by the employee"—citing for this statement, among other decisions, *Goldsmith v. Chesebrough, supra.* There may be found authorities elsewhere, some of which do and others do not support this general principle. It would serve no useful purpose to attempt to harmonize this apparent conflict, further than to say that a close analysis of them will reveal that the conflict is more apparent than real; and that those cases in which a contrary view to the one here expressed seems to have been held present different states of fact. We think the rule stated by Labatt in his work on *Master and Servant,* quoted and adopted as the correct rule in *Goldsmith v. Chesebrough, supra,* is controlling here, and is supported by sound reason, as well as many decisions throughout this country. The test would seem to be whether or not the instrumentality used by the employee was being so used at the time of the accident in furtherance of the master's business, with the knowledge and under the author-

ity of the master, either express or implied. If this be established by competent proof, then negligence in the use of such an instrumentality by the employee is imputable to the master, and an action against him for damages resulting therefrom may be maintained, even though the ownership of the instrumentality be in the employee.

It follows, therefore, that in our opinion O'Donnell was an employee and not an independent contractor at the time of the accident described in this record.

The remaining question is whether at the time of the accident O'Donnell was engaged about or in furtherance of the appellee's interest and business. This phase of the case has been commented upon in the preceding discussion, and little more need be added. O'Donnell was in the general employ of the appellee as a reporter, and, according to his testimony, the specific duty which he was to perform on the 28th of October was to cover and report the Crisfield meeting and return to Baltimore, which duty would not be completed until he reached Baltimore, and had not been completed at the time of the accident. The testimony of the city editor of the appellee is that O'Donnell was assigned to accompany the Republican state candidates, cover and report their meetings, which duty was to continue until he was "called off." So that whether it was O'Donnell's duty, in compliance with his master's orders and in furtherance of its business, to return to Baltimore from Crisfield, or to accompany the candidates to Frederick, in either event such duty had not been completed at the time of the accident. Finally, the record shows no deviation from the route or instructions on the part of O'Donnell. He was returning from Crisfield by a largely traveled and usual route, which was the only one known to him.

From the views herein expressd it will be seen that there was error in the action of the lower court in granting the appellee's A and B prayers directing a verdict for it. For this reason the judgment in favor of the appellee must be reversed.

*Judgment reversed, and new trial awarded, with*
*costs to the appellant.*