STANLEY NICHOLSON, A MINOR, BY EDWARD J. NICHOLSON, NEXT FRIEND AND GUARDI-AN AD LITEM, *v.* FILIPINO FEDERATION OF AMERICA, INCORPORATED, A FOREIGN COR-PORATION DOING BUSINESS IN THE TERRI-TORY OF HAWAII.

No. 2511.

ARGUED JANUARY 12, 1948.　　　DECIDED FEBRUARY 24, 1948.

KEMP, C. J., PETERS AND LE BARON, JJ.

Error to the circuit court first circuit to review the decision and judgment in favor of the defendant in the above-entitled cause, the same being a suit to recover damages for personal injuries inflicted upon the plaintiff on June 15, 1939, by a runaway automobile alleged to have been owned and controlled by the defendant at the time of the injury.

The case was tried, jury waived, and the court in its decision correctly stated that most of the evidence related to the issue of ownership and control of the automobile in question at the time of the accident.

The uncontroverted evidence showed that a few minutes before the accident the runaway automobile was parked by Valeriano S. Gabatero the driver on a steep hillside street; that the automobile had defective brakes which failed to hold and as a result the automobile ran down the hill and struck and injured the plaintiff. It is now tacitly admitted that the negligence of the driver was the direct and proximate cause of plaintiff's injuries.

The plaintiff in his efforts to establish that the defendant had control of the automobile at the time of the accident and that the driver was a servant or employee of the defendant had to rely almost exclusively upon circumstantial evidence, and his specification of errors complains of the exclusion by the court of certain of the evidence of circumstances deemed admissible to connect the defendant with the negligent operation of the automobile which injured the plaintiff.

The offered evidence which was excluded and which plaintiff specified as error was to the effect that the defendant, through one of its employees, paid Walter Freitas $45, the cost of a new bicycle, to replace the one demolished by the same accident which caused plaintiff's injuries; that the defendant, through the same employee, offered to

pay the plaintiff's doctor and hospital bills incurred on account of the injuries sustained by the plaintiff; that the driver of the automobile while still in possession of the automobile at the scene of the accident and within a few minutes after the accident occurred stated in substance to the police officer who investigated the accident that he was driving the automobile for the Filipino Federation of America and the Filipino Federation of America was the owner of that automobile and that the automobile had defective brakes.

Walter Freitas, called as a witness for plaintiff, testified that he parked his bicycle by the curb near where the runaway automobile struck and injured plaintiff, and went to a show; that when he returned he found his bicycle smashed and that Mr. Cariaga paid him for the damage to his bicycle. At this juncture the defendant moved to strike the statement that Cariaga paid him for the damage to his bicycle as "incompetent, irrelevant and immaterial." The court granted the motion, whereupon plaintiff offered to prove by the witness, in addition to the stricken evidence, that he went to the police station seeking information as to who would pay for his bicycle; that after an interview with the police officer at the desk he went to the office of the defendant seeking payment for his demolished bicycle; that Mr. Cariaga took him from the defendant's office to Schubert's bicycle store and said, "There, pick out your bicycle and I will pay for it"; that he picked out a new bicycle, and Mr. Cariaga gave him $45. The following is the substance of the evidence theretofore received of Cariaga's connection with the defendant: Cariaga testified that he had lived in the house maintained by the defendant at 1603 Republican Street, for the use of its members and employees, since 1936; that he was a member of and collector for the Filipino Federation of America; that he had a table in the territorial office of the defendant in

the Watumull Building where he worked; that "somebody maybe call me official because I collect." In answer to the question "Did you ever get directions from Mr. Pingpong to pay the bills?" Cariaga answered "Yes, he told me to pay it, and then what left from the money 'give it to me.' " Angel Pingpong, who described himself as the treasurer, territorial superintendent and member of the board of public relations of the defendant, produced the books (showing receipts and expenditures) kept by Cariaga the collector and testified that he, the witness, had the duty to see that the dues were collected and taxes and expenses paid; that he trusted Cariaga the collector, "I make him pay and he turn the money to me, all that is left." Cariaga's account for June 1939 shows receipts of $392.30 and payments of rent, lodging, transportation and telephone totaling $231.30 and "bills paid $126.95," grand total $358.25 leaving the unexpended balance for the month of $34.05 and no itemization of the $126.95 entitled "bills paid."

The circumstances under which Cariaga acted together with the foregoing statement of the duties and authority of Cariaga to act for the defendant corporation raised a rebuttable presumption that Cariaga acted in behalf of the defendant in paying for the demolished bicycle. Evidence to the effect that Cariaga purchased a new bicycle to replace the demolished bicycle, if admitted, would have tended to establish that the defendant admitted liability for the accident which caused the loss of the bicycle and inflicted injuries upon the plaintiff. The granting of the motion to strike and the rejection of the additional evidence was, therefore, error.

The refusal of the court to permit Police Officer Carl B. Seibert, who arrived at the scene of the accident within a few minutes after the accident, to testify as to statements made to him at the scene by the person who stated that he was the driver of the automobile, presents a crucial

and somewhat difficult problem. The officer testified that when he arrived at the scene he asked those gathered around the automobile who the driver of the automobile was, and that Valeriano Gabatero said that he was the driver and that he parked the automobile on the hill. At this juncture the defendant objected to any evidence of what the driver told the officer, on the ground that it would be hearsay. The court having sustained the objection, the plaintiff offered to prove by the officer that he interviewed the driver at the scene of the accident; that the driver stated that he parked the automobile on the hill; that the automobile had defective brakes; that he had been driving the automobile for a considerable period of time before the day of the accident; that he was driving the automobile for the Filipino Federation of America, and that the Filipino Federation of America was the owner of the automobile.

Counsel for defendant in his brief states: "We will concede that there was an accident on June 15, 1939, on Pele Street, Honolulu, T. H., in which plaintiff was seriously injured by this specific car, in the manner set forth in plaintiff's complaint. We will admit that the said car had defective brakes and that it had been driven to, and parked on, Pele Street by Gabatino Valariano * * * ." Valeriano Gabatero, the driver of the automobile, erroneously referred to above as Gabatino Valariano, could not be produced as a witness upon the trial, his whereabouts being unknown.

The offered evidence, taken in connection with all the circumstances of the case as outlined, if admitted, would have been sufficient to show, at least *prima facie*, that the declarant was authorized by the defendant to operate the automobile. Other evidence, which was not controverted, was to the effect that the purpose of the trip to Pele Street where the accident occurred was to transport two women

members of the Hilo Branch of the Filipino Federation of America from the place maintained by the defendant corporation at 1603 Republican Street, Honolulu, where the automobile in question was kept and used by members and employees of the defendant at least partly for the business of the defendant, to the residence of the territorial officials of the Federation in their quest for information as to a place to live during their sojourn in Honolulu.

The record evidence establishes that one of the purposes for which the defendant corporation was formed was: "To show the real humanitarian spirit by offering their moral, spiritual and material aid and protection to their fellow beings; most especially to the fellow members of the Federation."

"Declarations by a party relating to ownership of property, made by a person in possession thereof, may be admitted as part of the *res gestae* when uttered under such circumstances as satisfy the requirements applicable to other statements sought to be admitted under this exception to the hearsay rule. Declarations of this kind, however, must be confined to statements that bear upon the nature and character of the possession. This rule includes all declarations explaining and characterizing the possession and showing in what capacity the declarant holds * * * ." 20 Am. Jur., *Evidence* §, 681, p. 575. "The declarations of a person in possession of property are admissible when explanatory of such possession, particularly when they accompany some equivocal act which they serve to explain and qualify or are properly classed as res gestae." 20 Am. Jur., *Evidence* § 581, p. 489.

This court has adopted the foregoing rule as applicable to real estate in *O. R. & L. Co.* v. *Kaili*, 22 Haw. 673, 676, 677, where Chief Justice Robertson, speaking for the court, said: "Exceptions 7 and 10 relate to the admission of the testimony of the defendant and another witness to the

effect that Kamai, while in possession of the land in dispute, stated to them that the land was hers. The testimony was properly admitted as declarations characterizing the possession, and of the *res gestae."* See also *Carter* v. *Lulia,* 16 Haw. 630.

This court has not heretofore had occasion to consider the applicability of the rule to personal property. However, there is ample authority from other jurisdictions to the effect that the rule is applicable to explain possession of personal property as well as real property. In the case of *Humes* v. *O'Bryan & Washington,* 74 Ala. 64, 79, 80 (quoted with approval in *Sitz & Co.* v. *Herzberg-Loveman Drygoods Co.,* 194 Ala. 237, 240, 69 So. 881), where the title to bales of cotton was involved, the rule and the reason for the rule is thus clearly stated by the supreme court of Alabama: "Declarations of one in possession of property, explanatory of the possession, made in good faith, and showing the character or extent of his claim to it—whether in his own exclusive right, or as tenant of another; or the capacity in which he claims, as partner, trustee or agent for another—are admissible in evidence, in an issue of disputed ownership, no matter who may be parties to the litigation.—Daffron v. Crump, 69 Ala. 77; Clealand v. Huey, 18 Ala. 343; 1 Brick. Dig. p. 843, § 558; Thomas v. Wheeler, 47 Mo. 363. The theory, upon which the law admits such declarations, is, that they are a part of the res gestae of the possession itself; such possession being the principal fact, and itself prima facie evidence of ownership in fee simple.—1 Greenl. Ev. § 109; Perry v. Graham, 18 Ala. 822; 2 Whart. Ev. § 1166. Of course, in all such cases, the fact of possession should itself be admissible as one pertinent to the issue.—Fail v. McArthur, 31 Ala. 26." Neither has this court had occasion to pass upon the applicability of the rule in a case to recover damages for personal injuries occasioned by the use of personal prop-

erty. However, there is authority from other jurisdictions to the effect that the rule is applicable to explain the possession of personal property in such cases. In the case of *Highway Motor Freight Lines* v. *Slaughter* (Tex.), 84 S. W. (2d) 533, 536, the court applied the rule as follows: "It is contended that the court erred in admitting, over objection, the testimony of plaintiff to a statement by the truck driver, made after the collision, to the effect that the Highway Motor Freight Lines was owner of the truck in question. After describing the collision, plaintiff said that, immediately after the occurrence, he emerged from his car and the driver from the truck and, at this juncture, in answer to a question, the driver said the truck belonged to the Highway Motor Freight Lines. We think the testimony was admissible as part of the res gestae, and sufficient to show, at least prima facie, that the truck belonged to the motor carrier, and in connection with other facts and circumstances, sufficient to show the agency of the driver." See also *McClain* v. *Lewiston Interstate etc. Assn.*, 17 Idaho 63, 91, 92, 104 Pac. 1015.

There was conflict in the direct evidence as to who owned the automobile which caused plaintiff's injury. There were, however, a great many circumstances testified to having a tendency to establish custody, use and control of the automobile by the defendant in the conduct of its business of looking after the welfare of its members. Under the circumstances the court might have reached a different conclusion as to the liability of the defendant if the rejected evidence had been received and considered. It was therefore error to reject the offered evidence.

We do not discuss the refusal of the court to receive the evidence of the offer to pay plaintiff's hospital and doctor bills other than to say that the offer of proof did not negative the idea implicit in the offer that it was an offer to compromise.

The judgment is reversed and the cause is remanded to the circuit court for further proceedings consistent herewith.

*S. Kashiwa* (*N. Nakagawa* with him on the briefs) for plaintiff-plaintiff in error.

*A. K. Trask* (also on the briefs) for defendant-defendant in error.

### CONCURRING OPINION OF PETERS, J.

I concur in the result but I prefer that my concurrence be based upon the rule that "after the party alleging the agency has made a *prima facie* case of agency against the principal, any declarations made by the agent in the prosecution of, and relative to the business contemplated by such agency, are admissible against the principal."[1]

There was sufficient independent evidence, exclusive of his admissions to the police officer, to sustain a finding that Gabatero was an employee of the defendant and that the service in which he was engaged immediately prior to the accident was within the course or scope of his employment. But in order to establish liability on the part of the defendant for Gabatero's alleged negligence, it was incumbent upon the plaintiff to establish not only that the service performed by Gabatero was within the course or scope of his employment but also that the manner of its performance, *viz.*, by means of the automobile involved in the accident, was within the course or scope of his employment. This the plaintiff sought to do by showing (a) that the ownership and control of the automobile was in the defendant, and (b) if not, that it was used by Gabatero in the performance of his duties with the defendant's consent, either express or implied. If ownership or control were proved, the presumption arose that its use

[1] Peck v. Ritchey, 66 Mo. 114, 118, quoted with approval in Barz v. Fleischmann Yeast Co., 308 Mo. 288, 271 S. W. 361; see also Wigmore, Evidence § 1078.

was within the course or scope of the chauffeur's employment.[2] If, on the other hand, it appeared that the ownership or control of the automobile was in a person other than the defendant and that the chauffeur "either by express agreement or by some tacit arrangement, was in the habit of using [the automobile] in transacting the defendant's business"[3] its use upon the particular occasion involved was within the course or scope of the chauffeur's employment. The "owner" and "legal owner" of the automobile in question was registered under the provisions of Revised Laws of Hawaii 1945, chapter 138, part II, in the names of persons other than the defendant but there was evidence to the effect that although the defendant was not the legal owner of the automobile it nevertheless had the right to use and exercised control over its use, admitting of the inference that the defendant, although not registered as such, was in fact either the "owner" or the "legal owner," the change in registration into its own name, pursuant to the provisions of section 7342, being the only step necessary to complete transfer of the vehicle. Failure to comply with the provisions of law relative to registration is made a misdemeanor.[4] Hence the prerequisite of the rule "making a *prima facie* case of agency against the principal" had been met by the plaintiff.

There remains, however, to be considered the application of the final test of the rule, *viz.,* whether the admissions to the police were made by the chauffeur "in the prosecu-

---

[2] Berry, Automobiles § 1352 and cases cited.

[3] Patten v. Rea [S. C. 26 L. J. C. P. 235; 3 Jur. N. S. 892; 5 W. R. 689], 140 Eng. Rep. 554; see also Goodman v. Kennell, 1 M. & P. 241 (not available in library but referred to in Patten v. Rea, supra, and Carl Corper Brewing & Malting Co. v. Huggins, 96 Ill. App. 144); Dillon v. Prudential Ins. Co., 242 Pac. 736 (Calif. Dist. Ct. of App.); Goldsmith v. Chesebrough, 138 Md. 1, 113 Atl. 285; and noted in 57 A. L. R. 739; 2 Berry, Automobiles § 1385.

[4] R. L. H. 1945, § 7348.

tion of and relative to the business contemplated by such agency." If so, they were admissible. If not, in my opinion, they had passed the *res gestae,* were not spontaneous explanations within the *res gestae* rule, hearsay and inadmissible.

The traffic code of the City and County of Honolulu, a certified copy of which is on file in the clerks' office, contains provisions applicable to the accident involved in the instant case which required Gabatero to stop, remain at the scene of the accident[5] until he had complied with the provisions of the code in respect to giving information and rendering assistance[6] and to make reports of the accident.[7] The section of the code last referred to is quoted in the margin.[8] The chauffeur's statement to the police officer was in legal effect a "report" of the accident within the requirements of the code to that effect. What the report must contain is not prescribed. But its contents to the extent that they are material to the accident are pertinent. Ownership and agency under the circumstances were material. The authority conferred by his principal to use the car upon the public streets included the implied authority to comply with the provisions of the traffic code and, in the event of an accident requiring a report, to make such report. When the defendant constituted Gabatero its agent to operate the car, the traffic code imposing the duty of reporting an accident became a part of the agency. "For that purpose [making a report] his agency continued by operation of law. When defendant appointed this

---

[5] Rev. Ord. 1942, § 1283.

[6] *Id.* § 1285.

[7] *Id.* § 1288.

[8] "Sec. 1288. Duty to report accidents. The driver of any vehicle involved in an accident resulting in injury to or death of any person, or total property damage to an apparent extent of twenty-five dollars or more, shall immediately or as soon thereafter as possible report such accident and later forward a written report of such accident to the

64

agent, presumptively, he [it] knew that this was a duty of the agency imposed by law. Under these circumstances we cannot hold that, in making this report, he was not acting as the defendant's agent. His work was not completed until he had made this report."[9]

police department.

"The police department may require any driver of a vehicle involved in an accident of which a report must be made as required in this section, to file supplemental reports whenever the original report is insufficient in the opinion of said department, and may also require witnesses of accidents to render reports to said department.

"The police department shall tabulate and analyze such reports and shall forward monthly copies summarizing same to the traffic safety commission."

[9] Ezzo v. Geremiah, 107 Conn. 670, 142 Atl. 461, 465; see also Voegeli v. Waterbury Yellow Cab Co., 111 Conn. 407, 150 Atl. 303.