## WOOD *v.* H. W. GOSSARD COMPANY

[No. 77, October Term, 1953.]

178

*Decided February 23, 1954.*

*Petition by appellee for clarification of opinion filed April 13, 1954, granted April 22, 1954, and opinion and mandate modified.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edward Pierson* and *Leon H. A. Pierson,* with whom were *Pierson & Pierson* on the brief, for the appellant.

*Samuel S. Smalkin,* with whom were *Rollins, Smalkin, Goudy & Weston* and *Ginsberg & Ginsberg* on the brief, for the appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

This appeal is from a judgment *n.o.v.* entered in favor of the appellee, The H. W. Gossard Company, sellers of ladies' foundation garments, in an action for personal injuries brought by the appellant against it and its field saleswoman, Susan Reading Brown.

During the week of December 14, 1950, the appellant, a buyer of corsets for a department store in Richmond, Virginia, attended the "Corset Market Week" displays held twice annually in New York City. On Wednesday of that week, she went to the Gossard Company showroom, in accordance with an appointment made earlier with Miss Brown, whose territory included Richmond. Thursday evening the two women had dinner together. In the course of the evening it was agreed that appellant would not use the return portion of her round trip airplane ticket from Richmond but would travel, at least as far as her daughter's home in Baltimore, in Miss Brown's automobile.

Mrs. Wood and Miss Brown left for Baltimore about two o'clock Saturday afternoon. The automobile driven by Miss Brown struck another car which had halted in obedience to a traffic signal at the intersection of Route 40 and Route 213 in Maryland near Elkton, and in this collision, Mrs. Wood was severely and permanently injured.

The jury found a verdict in favor of appellant against both defendants.  The defendant, Susan Reading Brown, filed a motion for a new trial and the defendant, The H. W. Gossard Company, filed a motion for a judgment *n.o.v.*, coupled with the usual alternative motion for a new trial.  The court overruled Miss Brown's motion for a new trial and granted the motion of The H. W. Gossard Company for a judgment *n.o.v.*  This appeal is taken from the action of the court in granting the motion of The H. W. Gossard Company and the entering of judgment in its favor.  Susan Reading Brown has not appealed.

The appellant contends that the facts of this case call for application of the doctrine of *respondeat superior.*  This court has said: "All of these particular applications of the doctrine of *respondeat superior* arise from the principle that the liability of the master for the tortious acts of the servant rests at last upon the existence of authority, that the act must have been done in the course of an employment which the master has authorized, and that, unless such authority can be shown, there is no liability.  In testing the application of the doctrine to particular cases courts have in some instances assumed that a given act was or was not done in the course of the employment accordingly as the master did or did not have control of the servant at the time (*Khoury v. Edison Electric Illuminating Co.,* 265 Mass. 236, 164 N. E. 77), in others that it depended upon whether the act was a natural and necessary incident of the service (*Guitar v. Wheeler* (Tex. Civ. App.), 36 S. W. 2d 325; *Regal Laundry Co. v. Abell Co.,* 163 Md. 525), but these different approaches are only superficially different, for beneath all of them lies the essential premise that liability depends upon authority, express or implied." *Great Atlantic & Pacific Tea Company v. Noppenberger,* 171 Md. 378, 392.

The rule is that if a third person enters a vehicle operated by a servant and does so at the invitation of or with the permission of the servant who has no au-

thority or apparent authority to give such invitation or permission, the master is not liable to such person for the negligent conduct of the servant, although the conduct which immediately causes the harm is within the scope of the servant's employment. *Restatement of Agency,* Section 242 and Comment. *East Coast Freight Lines v. Mayor and City Council of Baltimore,* 190 Md. 256. Cf. *Wilson v. Dailey,* 191 Md. 472.

We accept as settled law that if by reason of the position in which he is placed by his master, a servant is clothed with apparent authority to invite or permit persons to go to or enter a particular place or vehicle, the master will be bound by the servant's acts done in pursuance of that appearance of authority, to the same extent as the master would be bound had he himself issued the invitation or permission. However, a servant operating a motor vehicle is not regarded, by that fact alone, as thereby clothed with even the appearance of authority to invite third persons to ride. 2 A. L. R. 2d 421 (Annotation).

The appellant considered the decision in the case to turn on whether Miss Brown was the servant of the Gossard Company and whether the trip, during which the accident occurred, was in furtherance of the employer's business. The appellee, in effect, concedes generally the relationship of master and servant, although it argues that the ill-fated trip definitely was not on the business of the Gossard Company. The ultimate question, on which the decision hinges, is, assuming that Miss Brown was on the employer's business, did she have express or apparent authority to permit Mrs. Wood to ride in the automobile on the occasion in question? The appellee says that the answer must be in the negative and urges, correctly, we think, that the burden is on the appellant to show a grant of authority, actual or apparent, by the employer. The test on this appeal is, therefore, whether there was sufficient evidence to present this issue to the jury and so, whether the trial judge was in error in granting the appellee's prayer for a

judgment *n.o.v.* Cf. *East Coast Freight Lines v. Mayor and City Council of Baltimore, supra,* 285.

We think that unquestionably there was evidence from which the jury could reasonably find that Miss Brown was an employee and not an independent contractor, and that the trip in which Mrs. Wood was injured was in furtherance of her employer's business.

Miss Brown was employed by the Gossard Company in 1948 and was assigned a territory which included the southern half of New Jersey, Delaware, Maryland and a part of Virginia. It was her duty to call on all present and prospective customers of the company within the territory, including prospective customers who had made inquiry by mail, regarding its products. A further part of her duty was to investigate complaints which customers made against her employer. The company required the saleswomen to cover the territory by automobile and it had lent Miss Brown the purchase price of her automobile without interest, being repaid by deductions from her monthly commissions. She was required to work exclusively for the Gossard Company. She was told to submit schedules or her itinerary, and the company had the right to require her to change it if they desired, as well as to call for reports of the territory covered. It was, for all practical purposes, mandatory for all of the salespeople to attend Corset Market Week in New York, and all but one or two of the seventeen representatives did attend. It was unquestionably mandatory for all of them to attend the company's sales meeting in Chicago, which began Tuesday of the week following the New York convention. Miss Brown was on the first leg of her drive from New York to Chicago at the time the accident occurred and the treasurer of the Gossard Company in New York had advanced her $125.00 to enable her to make the trip. It was her plan to go first to Atlantic City to call on a special customer there and then to stop at her headquarters in Bethesda, Maryland, to pick up her mail and call on customers there and in Silver Spring. She

carried with her in the car sample cases of the company's new line. All of this was known to the executives of the Gossard Company.

Finding, as we do, that unquestionably there was evidence of agency, and business purposes as to the trip in question, we focus our attention on whether there was sufficient evidence to go to the jury on the question of authority, express or apparent, for Mrs. Wood to ride in Miss Brown's car. There was evidence presented from which the jury could have found the following.

Miss Brown had been introduced to Mrs. Wood by one of the Varley brothers, J. L. Varley, who was then the Eastern manager of the Gossard Company. The Varley brothers were the executives of the company. Mr. J. L. Varley had become president, with headquarters in Chicago, another Varley was the general sales manager, and Mr. Harry Varley was the Eastern sales manager. Mrs. Wood, as buyer for other department stores, long had been a customer of the Gossard Company, and formerly had used all of its products. As buyer for the Richmond department store, she had used only the heavier foundations. The Gossard Company was engaged in a vigorous campaign to promote the sales of a new line of its light-weight garments under the name of "Old Gold". Mrs. Wood testified that Mr. Harry Varley had been urging her to put in the light-weight line for sometime. During Market Week, she said, both Mr. Harry Varley and Miss Brown: ". . . were bringing pressure to bear that that national promotion would be the way to start the light weight line in Richmond." She said further: "Mr. Varley and Miss Brown and I were inclined to think in some way it might tie in, in Richmond, with Old Gold cigarettes." Not only did Mr. Harry Varley and Miss Brown make particular efforts during Market Week to persuade Mrs. Wood to put in the Old Gold light-weight line, but so, also, did Miss Ashby, who was a coordinating saleswoman in New York. Miss Ashby was employed there to meet customers, to entertain buyers, to put them at their

ease, and to help close sales, by working with other representatives of the company. The description of her duties and the evidence of what she actually did indicated that, in substance, if not in title, she could be regarded as an assistant sales manager in New York.

Mrs. Wood on several occasions went to Miss Ashby's room, either with or without Miss Brown, to look over the light-weight line. At dinner one night, Miss Brown got Mrs. Wood's agreement to stay over in New York until Saturday—something that she had rarely, if ever, done before in Market Week—to inspect the light-weight line in the Gossard show rooms on Friday afternoon, and then drive back with Miss Brown to her daughter's in Baltimore. Mrs. Wood went to the show rooms late Friday afternoon and was in the office for some two hours, staying so late that she, Mr. Harry Varley and Miss Brown were the only ones left in the office. Mr. Varley spoke to her that afternoon a number of times in the office, and as she left, walked to the elevator with her and Miss Brown. At the elevator, Miss Brown said: " 'Mr. Varley, Jerry is driving back with me as far as Baltimore. I am going to drop her at her daughter's' . . ." It was further testified that Mr. Varley: ". . . wished us a good trip and said he wished that he were going with us."

The words used might well be regarded as casual conversation, without particular significance, if the stage had not been set for their utterance by the scenes of Market Week, which had preceded them. The Gossard Company was described as one big family in which each knew what the other was doing and in which each helped the other. Each one in the organization was aware of Miss Brown's efforts to make Mrs. Wood a purchaser of the Old Gold line and that the company particularly desired Richmond to be a focal point for the use of the Old Gold advertising. As the area head of the company, Mr. Harry Varley, of course, was fully informed of all that went on in this regard and, in addition, personally aided Miss Brown's efforts to sell Mrs. Wood. It is in

this setting that his walk to the elevator and his answer to the statement, concerning the trip to Baltimore, must be viewed.

The guiding principle is that in a dispute as to facts or inferences properly deducible from facts, the judge shall not impose the solution he prefers if another solution may rationally be adopted. The choice, as this Court has repeatedly decided, is for the jury. For a recent example, see *Rea Construction Co. v. Robey,* 204 Md. 94. In the instant case, the appellant, of course, was fully aware of the Gossard Company's great current interest in her. On one occasion, she was present when Miss Ashby was told that she was to ride as far as Baltimore with Miss Brown. Miss Ashby, knowing that this would enable Mrs. Wood to stay over an extra day and inspect again the light-weight line, and knowing that there would be a prolonged opportunity in the car for salesmanship, acquiesced. On a second occasion, Mr. Varley, fully aware of the potentialities of the ride to accomplish a sale which had not yet been made, likewise acquiesced in Miss Brown's taking Mrs. Wood with her. Certainly, the appellant could assume, and reasonable men could find, that the arrangements for the ride had the full blessings of the company and that she was its guest as well as Miss Brown's.

The motion *n.o.v.* should not have been granted.

> *Judgment for appellee reversed, and judgment entered in favor of appellant for the amount of the verdict, with interest from the date of the verdict; with costs to be paid by the appellee.*